*Nov. Term, 1859.*

RICKETTS
v.
HAYS.

---

## RICKETTS and Another *v.* HAYS.

Where a contract for the delivery of ten thousand bushels of corn specified that two thousand six hundred bushels of the corn was already in pens, and was put at the purchaser's risk as to damage by rain—*held*, that it cannot be implied that the purchaser accepted the corn in pens as being two thousand six hundred bushels.

Nov. Term, 1859.

RICKETTS
v.
HAYS.

*Held*, also, that the vendor must bear all shrinkage, or loss, or damage of the corn in pens, except damage by rain, until the corn was received by the purchaser.

Where an executory contract stipulates for the delivery of a certain quality of produce, without passing title to any particular produce, the vendor is not a bailee of the produce prior to the delivery at the place and within the time fixed. The contract is discharged by the delivery of the article, of the quality mentioned.

If, in the absence of fraud or warranty, a purchaser accepts and receives goods, he thereby not only waives defects, but he is so far concluded that he cannot recover for any patent and known defect.

Where the contract is for the delivery of goods of a certain quality, but the particular article to be delivered is not fixed, there is no warranty that the goods when delivered shall be of the quality mentioned; and the failure to deliver goods of such quality is not a breach of warranty, but a breach of the contract.

Thursday, December 1.

APPEAL from the *Tippecanoe* Court of Common Pleas.

WORDEN, J.—Suit by the appellants against the appellee on a contract, as follows:

"*Edinburgh, December* 21, 1854.

"I have this day sold *Ricketts* and *Daily* ten thousand bushels of good merchantable corn, to be delivered them on the cars at *New Bradford*, about thirty miles north of *Lafayette*, they to furnish cars to transport the same, and should they not furnish cars enough to carry all of it, by the 15th day of *February* ensuing, they are to receive the balance of it in pens, on the railroad. Twenty-six hundred bushels of the corn is now in pens, and is to be left until the last, and is at their risk as to damage by rain; they to pay me for the same at the rate of 45 cents per bushel, as follows: An order on *James Mix*, Esq., for five hundred dollars, and pay my acceptance for three thousand dollars, due about the 15th of *February* ensuing, and payable in the city of *New York*, and the balance when the corn is delivered. If the twenty-six hundred bushels above mentioned, should be taken off by the 15th of *February*, I am still bound to attend to the shipping of it. In testimony," &c.          [Signed]     "*Cormacan Hays*."

There was a supplemental contract between the parties, but as no question arises upon it, and as the above con-

tract is not varied by it in any matter upon which any
question arises, it need not be here stated.

It is averred in the complaint that the plaintiffs have
paid the purchase-money for the corn, but that, although
the plaintiffs furnished cars, &c., only nine thousand four
hundred and thirty-nine bushels of the corn has been de-
livered, and that four thousand seven hundred and fourteen
bushels of that so delivered was not good merchantable
corn, but was greatly damaged and of inferior value, and
worth ten cents less per bushel, than if it had been good
merchantable corn.

Answer, that the defendant delivered to the plaintiffs, as
agreed, seven thousand four hundred bushels of corn, under
said agreement, and, also, the two thousand six hundred
bushels mentioned in the contract as being in pens, all of
which corn was received by the plaintiffs, on said cars,
under said contract.

The replication denies the delivery of all the corn, and
denies that what was delivered, was received by the plain-
tiffs as good merchantable corn, under the contract.

There were other matters pleaded, but the above state-
ment of the pleadings is sufficient to an understanding of
the questions presented.

Trial by jury; verdict and judgment for the defendant,
over a motion by plaintiffs for a new trial.

On the trial it appeared that all the corn contracted for
had been delivered, provided the two thousand six hundred
bushels described in the contract as being in pens, held out.

In relation to this lot, it was proven by a witness named
*Watson*, that when the corn was put into the pens, in *No-
vember* and *December*, 1854, there were two thousand six
hundred and eleven bushels. It was also proven by an-
other witness, *Averett*, who superintended the getting of
the cars for the plaintiffs, and weighing the corn, and was
present when it was weighed and placed upon the cars, in
*June*, 1855, that there were then but two thousand three
hundred and ten bushels.

The Court charged the jury, in relation to this point, as
follows:

"The corn mentioned in the contract as being in pens, was agreed upon at two thousand six hundred bushels, and if you are satisfied that there was that amount placed in the pens, and was there when the contract was made, and there is no evidence tending to show that any portion of it was removed, wasted, or injured, except by rain, and if you believe that all the corn put in pens was shipped to the plaintiffs, then you will not consider the testimony of *Averett*, that there was only two thousand three hundred and ten bushels in the pens, in *May* and *June*, 1855, and that testimony is withdrawn from you, and, in such case, you should find according to the quantity sworn to by *Watson*, namely, that there were two thousand six hundred bushels in the pens."

To this charge the plaintiffs excepted.

The plaintiffs asked the following charge, viz.:

"If there was a deficiency in the quantity of corn delivered by the defendant under this contract, the plaintiffs are entitled to recover the value of as much corn as was deficient, whether the deficiency arose from the fact that there was not two thousand six hundred bushels delivered on the cars from the pens mentioned in the contract, or otherwise."

This charge was refused, but modified and given as follows:

"If there was a deficiency in the quantity of corn delivered by the defendant under this contract, the plaintiffs are entitled to recover the value of as much corn as was deficient."

Exception was taken.

We suppose that when the Court instructed the jury that "the corn mentioned in the contract as being in pens, was agreed upon at two thousand six hundred bushels," it had reference to the terms of the written contract in question, as there was no other evidence of such agreement, and had there been, it would have been for the jury to determine whether such agreement existed. The terms of the contract do not, in our opinion, sustain the proposition thus laid down by the Court to the jury. The contract is

for the delivery of ten thousand bushels of corn, and specifies that "two thousand six hundred bushels of the corn is now in pens, and is at their (the plaintiffs') risk as to damage by rain." There is nothing in the contract, from which it can be fairly implied that the plaintiffs accepted any particular corn "in pens" as being two thousand six hundred bushels. To be sure that part of the corn in pens to the amount of two thousand six hundred bushels, was to be at the plaintiffs' risk as to damage by rain. This stipulation would require the plaintiffs to receive two thousand six hundred bushels of corn from the pens, although it might be damaged by rain after making the contract; but it would not require them to receive less than the two thousand six hundred bushels as the part specified to be in pens. There was no specific parcel of corn agreed upon as two thousand six hundred bushels. If the contract be construed to mean that the corn in the pens was to be taken at two thousand six hundred bushels, the plaintiffs would be entitled to it for that amount, whatever might be the true amount. Now, suppose that the corn, instead of falling short of the quantity specified, had greatly overrun it, would the plaintiffs have been entitled to it all, or for the two thousand six hundred bushels only? We think not. The contract required the delivery of ten thousand bushels, and only that amount, whether that in the pens fell short of, or overran the two thousand six hundred bushels.

But the counsel for the appellee say of the charge given, that, "its only tendency was to charge the jury that if there were two thousand six hundred bushels of corn in the pens when the contract was made, and none of it had been removed, but all was delivered to the plaintiffs, the shrinkage or loss must be borne by them, and not by the defendant." Admitting this to be the effect of the charge, it is still objectionable. There was to be a delivery of ten thousand bushels; that is, there must be that amount when delivered, in order to discharge the contract. A delivery of what had once amounted to ten thousand bushels, but which, at the time of delivery, had fallen short of that amount, in

consequence of shrinkage or loss, would not be a compliance with the terms of the contract. The plaintiffs were to be at the risk of damage by rain, but they were still entitled to the full amount, although it might be damaged.

The jury should have been left to determine from the evidence, what amount of corn was actually delivered, as well from the pens as otherwise.

We think the Court erred in giving the charge which was given, and in refusing to give the charge asked by the defendant without modification. For this reason the judgment will have to be reversed.

There are other questions arising in the case, upon another branch thereof, which we will proceed to examine, as they may be important on the further trial of the cause. These questions arise on the plaintiffs' claim for damages in consequence of the four thousand seven hundred and fourteen bushels being damaged and unmerchantable. It appears by the evidence, that the above amount being other corn than that mentioned as being in pens, was damaged by rain to the extent of from five to ten cents on the bushel. The corn was delivered from *Watson's* warehouse, upon the cars furnished by the plaintiffs, at *New Bradford*, according to the stipulations of the contract. *Averett*, who superintended the procuring of the cars, and the weighing of the corn, on the part of the plaintiffs, told *Watson* that the corn was damaged and unmerchantable, and that if it were his he would like to have it out of the other end of the crib. He says he had no authority from the plaintiffs to receive the corn. The corn was taken, however, to the plaintiffs' distillery at *Edinburgh*, and there used in distilling. It appears that the plaintiffs were apprised of the unsound quality of the corn before it was taken from the cars at *Edinburgh*. There was no offer to return the corn, or notice to the defendant that the plaintiffs were dissatisfied with it.

The plaintiffs asked several charges on this branch of the case, which were refused. It is unnecessary to extend this opinion by inserting these charges at length, or examining them in detail, as we are satisfied that on the facts

Nov. Term,
1859.

RICKETTS
v.
HAYS.

proven there can be no recovery upon this part of the claim.

Some of the charges were to the effect that the defendant might be held responsible as bailee for the safe keeping of the corn. The relation of bailor and bailee did not exist between the parties. The contract was executory (at least so far as all the corn, except the two thousand six hundred bushels, was concerned), and might have been discharged by the delivery of any corn of the quality mentioned. The defendant held no corn of the plaintiffs as their bailee, because no title to any particular corn passed to them by the contract. If the defendant is liable at all, it is for a breach of his contract to deliver the quality of corn specified.

No fraud is alleged or claimed, and in the absence of fraud or warranty, where a purchaser accepts and receives goods, he thereby not only waives the defects, but is concluded thereby so that he cannot recover thereafter for any patent and known defect. Here the defect in the corn was patent and known to the plaintiffs' agent at the time the corn was delivered, and known to the plaintiffs before it was unloaded from the cars and consumed by them in distilling.

The following authorities fully sustain the above proposition: *Hopkins* v. *Appleby*, 1 Stark. 477; *Milner* v. *Tucker*, 1 C. and P. 15; *Cash* v. *Giles*, 3 *id.* 407; *Dana* v. *Boyd*, 2 J. J. Marsh. 588; *O'Barmon* v. *Relf*, 7 Dana, 320; *Kerr* v. *Smith*, 5 B. Mon. 552; *Sprague* v. *Blake*, 20 Wend. 61. There are probably numerous other cases to the same effect, which have not come under our notice, and, perhaps, some of a contrary tendency; but the doctrine above stated is undoubtedly in accordance with the weight of authority.

The case of *Sprague* v. *Blake, supra,* involved a contract for the delivery of wheat, which was to be merchantable, at a specified price per bushel. A portion of the wheat delivered was unmerchantable, being broken wheat, black kernels, cockle, and cheat. One *Morgan* was the agent of the defendant in receiving wheat, but he was not present

Nov. Term,
1859.

RICKETTS
v.
HAYS.

when the wheat was received, but it was received by his servants. The defendant sought to avoid paying more than the value of the wheat, being less than the contract price. The Court say: "There was here certainly no implied warranty; and, we clearly think, no express warranty. It is true, that the wheat was, by the terms of the agreement, to be merchantable. That is understood of every such contract, even without express terms, while it is executory. When the party comes, under such a contract, to deliver an inferior, unmerchantable commodity, which lies open to inspection, then is the time for the vendee to take his ground. He must then refuse acceptance, or at least as soon as he discovers what the quality of the article is, and offer to return it. When it is fully accepted, a new rule of construction arises. The executory contract is performed, no action lies upon that; and no defense, therefore, can be based upon it; but either must go upon an actual sale and delivery. * * * The acceptance was an assent that the terms of the executory contract were fulfilled."

In the case at bar, we need not determine whether *Averett*, who was the plaintiffs' agent for the purpose of procuring the cars on which to load the corn, and for the purpose of seeing the corn weighed, had not an implied authority to receive the corn, although no express authority was given, because the plaintiffs, afterwards, and with a knowledge of its unsoundness, received the corn and distilled it.

As before remarked, no fraud is imputed to the defendant; but it is insisted that the terms of the contract amount to a warranty that the corn was of the quality stipulated for in the contract. The case of *Sprague* v. *Blake*, *supra*, decides this question the other way, and, we think, correctly. Here was a contract for the delivery of a certain quality of corn, and if the defendant failed to deliver corn of the prescribed quality, he might be guilty of a breach of his contract, but he cannot be said to have warranted that the corn, when delivered and accepted, should be of the quality designated. Suppose that the

corn in question had been rejected by the plaintiffs, and the defendant had failed to deliver other corn of the quality specified, the defendant would clearly have been liable, not for a breach of warranty, but for a breach of his contract to deliver the prescribed quality of corn.   Upon this point, the remarks of Lord ABINGER, in *Chanter* v. *Hopkins*, 4 M. and W. 398, are appropriate.   He there said: " A good deal of confusion has arisen from the unfortunate use of the word 'warranty.'   Two things have been confounded together.   A warranty is an express or implied statement of something which the party undertakes shall be a part of the contract; and, though a part of the contract, yet collateral to the express object of it.   But in many of the cases, some of which have been referred to, the circumstance of a party selling a particular thing by its proper description, has been called a warranty; and a breach of such contract, a breach of warranty; but it would be better to distinguish such cases as a non-compliance with a contract which a party has engaged to fulfill; as if a man offers to buy peas of another, and he sends him beans, he does not perform his contract; but that is not a warranty: there is no warranty that he should sell him peas; the contract is to sell peas, and if he sells him anything else in their stead, it is a non-performance of it. So if a man were to order copper for sheathing ships— that is a particular copper, prepared in a particular manner—if the seller sends him a different sort, in that case he does not comply with his contract; and though this may have been considered a warranty, and may have been ranged under the class of cases relating to warranties, yet it is not properly so."

The authorities cited by the appellants to show that the contract amounts to a warranty, do not sustain the position.

The first is *Bradford* v. *Manly*, 13 Mass. R. 139.   This case simply decides that a sale by sample is tantamount to a warranty that the article sold is of the same kind or quality as the sample.   This, we doubt not, is correct law, but it does not meet the case under consideration.

*Hastings* v. *Lovering*, 2 Pick. 214, is the next case cited. This case decides that a sale note containing the statement, "sold *A.* two thousand gallons prime winter oil," amounted to a warranty that the article sold agreed with the description; but the decision was placed upon the ground that the contract was executed, and not executory. Certain specific oil passed, by the contract, to the purchaser, and herein the case differs widely from the one under consideration. There, the property having passed, if there was a breach at all, it must have been of warranty; but here, the only breach there could be, would be a failure to deliver the kind or quantity of corn specified, and this, we have seen, is a mere non-performance of the contract, and no breach of warranty. The same remark is applicable to the case of *Henshaw* v. *Robins*, 9 Met. 83, next cited.

*Lamb* v. *Craft*, 12 Met. 353, is not in point, or if it be, it is against the appellant, as it was held that there was no warranty in the case.

*Martin* v. *Roberts*, 5 Cush. 126, the last case cited upon this point, is not applicable, as no warranty was involved, but a question of fraud, growing out of false representations.

These are our views in relation to this branch of the case; but the judgment must be reversed for the reason before given.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*S. A. Huff, Z. Baird,* and *J. M. La Rue,* for the appellants.

*R. C. Gregory, H. W. Chase,* and *J. A. Wilstach,* for the appellee (1).

(1) After setting forth the contract, pleadings, and evidence, counsel for the appellee proceeded as follows:

Upon the evidence, the Court instructed the jury, at the instance of the defendant:

1. That if they should believe the defendant delivered the plaintiffs ten thousand bushels, or over, of corn on the contract, and the plaintiffs received the same, there could be no recovery for a breach of the contract, although the corn received was inferior to that contracted for.

2. To create a liability upon a sale and delivery of corn, where the same is open to inspection of both parties, there must be either fraud on the part of the seller or a warranty to cover unsoundness.

3. If the jury should believe, from the evidence, that the plaintiffs received the corn in question in its unsound state, knowing it to be unsound, although they may have objected to it at the time, and have receipted for it as an unsound article, still no liability can exist on a contract for the delivery of merchantable corn; the corn having once been delivered on the contract and received, the contract is at an end, and no liability can arise, except such as may arise on the sale and delivery of personal property.

4. [The fourth was the first quoted in the opinion.]

. The only errors assigned upon the record or alluded to in the appellants' brief, arise upon the instructions given for the appellee, and those which were asked for by the appellants and refused.

The first instruction for the appellee is simply, in effect, that if the defendant delivered the ten thousand bushels of corn upon the contract, and the plaintiffs received it upon the contract, though it was of an inferior quality, the contract is satisfied. We certainly are unable to perceive any valid objection to this proposition. Even though parties contract for the delivery of what is termed merchantable corn, it is certainly competent for the vendor to deliver, and for the vendee to receive, upon the contract, an inferior article. What amounts to merchantable corn may be, and frequently is, a matter of opinion to some extent, and reason and justice demand that the vendor, when he delivers corn as being upon the contract, should have it applied in discharge of his liability, and not be afterwards subjected to litigation as to its quality. Fair dealing requires that the vendee should take his stand, and either accept the article as in fulfillment of the contract, or refuse to receive it at all as being on account of the contract. This position is sustained by the authorities hereinafter cited.

*Morton* v. *Tibbitt*, 69 E. C. L. 436, cited by the appellants, does not sustain their objection to the first and third instructions given for the defendant. There is a numerous class of cases as to what acts of acceptance preclude the vendee of goods from objecting to their quality on the ground of their not being equal to sample or of the quality purchased; and the point decided in *Morton* v. *Tibbitt* was, that there might be an acceptance of goods so as to take the case out of the statute of frauds, and still not be such acts of acceptance as to destroy the right to object to the quality. In other words, that slighter acts of acceptance would take the case out of the statute of frauds than would deprive the vendee of the right to rescind the contract. *Chaplin* v. *Rogers*, 1 East, 192, and *Bushnell* v. *Wheeler*, cited in *Morton* v. *Tibbitt*, were also decisions as to what was an acceptance under the statute of frauds, and bear no analogy whatever to the case under consideration. The same remark is applicable to 2 Parsons, 327, 328, and notes, cited by the appellants. The complaint admits the acceptance of what corn was delivered, upon the contract; and we apprehend that the fact that the plaintiffs used the corn at their distillery, as shown by their own witnesses, and of which there was no dispute, left no ground to doubt but that they appropriated the corn. We are at a loss to perceive what counsel are seeking to prove by the citation of such authorities.

The second instruction given for the appellee is clearly unobjectionable. The appellants only object because it was not applicable to the evidence. In

Nov. Term, **1859.**

RICKETTS
v.
HAYS.

this they are mistaken. The corn was open to the inspection of their agents and themselves at the time it was accepted.

The third instruction given went further, perhaps, than was really necessary, . under the proof, but it was in the precise language of cases hereinafter cited.

The objection to the fourth instruction, that the Court invaded the province of the jury in assuming facts, and in discriminating between witnesses, is unfounded. The instruction, taken as a whole, assumes no fact except that agreed upon by the parties in the written contract which is sued upon, and it shows that fact to be subject to be found in accordance with the proof. Its only tendency was, to charge the jury that if there was two thousand six hundred bushels of corn in the pens when the contract was made, and none of it had been removed, but all was delivered to the plaintiffs, the shrinkage or loss must be borne by them and not by the defendant In that view, and the jury could have taken no other, the instruction is unobjectionable.

The objection that the Court erroneously refused to give the first and second instructions asked by the appellants, which were that the appellee, as bailee, trustee, or agent, was bound to keep the corn in good order, and is chargeable for damages to it by exposure to the weather, is subject to three conclusive answers:

1st. There is no such case made by the pleadings. The plaintiffs do not charge the defendant as bailee, trustee, or agent, but only as a vendor, and the issues are made accordingly.

2d. If the point was raised by the pleadings, still the instruction, as asked, would be improper, because the question then would be, not whether damage had occurred from exposure to the weather, but whether the defendant had been guilty of negligence as bailee, &c. To this effect are the authorities cited by the appellants. The roof of a warehouse might be blown off by an extraordinary storm, and corn exposed and damaged by the weather, without any negligence of the bailee, trustee, or agent.

3d. There was no specific corn sold except the two thousand six hundred bushels in the pens, and consequently none was ever in the appellee's hands as bailee, trustee, or agent for the appellants. The contract was entirely executory, except so far as the two thousand six hundred bushels of corn in pens was concerned; and any corn of the quality named could be delivered upon it, and any corn accepted would operate to discharge it.

The third instruction asked by the appellants was properly refused, because it proceeds upon the ground that the appellee was acting as the agent or trustee of the appellants, when he is charged as vendor, and the evidence shows him liable in that capacity, if at all.

The fourth, fifth, and eighth instructions asked for by the appellants, and refused by the Court, practically, though not very perspicuously, raise the main question in the case, to-wit: Whether upon a written contract of sale, and for the future delivery of merchantable personal property, a delivery by the vendor upon the contract, and an acceptance and use of an inferior article so delivered by the vendee, the contract is satisfied; or whether, in such case, the vendee may retain the property and sue for the damages occasioned by such inferiority.

The Court below held that the delivery of an article of inferior quality, where the defects are apparent and there is no fraud, and no express warranty at the time of delivery, and an acceptance and use of the same, amounts to a

satisfaction and discharge of the contract. Such, we contend, is the current of authority, though the appellants claim that there is an apparent conflict in the decisions of the Courts of different states upon the subject.

The appellants cite *Kellogg* v. *Denslow*, 14 Conn. R. 411, as being conclusive in their favor. They contend that the broad doctrine at p. 424, if applied to an executory contract, that "in all cases of fraud or warranty, where the vendee has the right of disaffirmance, he may keep silence, and bring his action, in affirmance of the sale, either for the fraud or upon the warranty," and "after a full acceptance by the vendee, with knowledge of the defects in the property, or neglect to obtain that knowledge, his right to annul the sale is extinguished, but his other remedies are unimpaired," is in conflict with the ruling below. It will be noticed, however, that the property in that case, was machinery to be used in a factory; that the defects complained of were such as could not be known by inspection, and would, from the necessity of the case, only be disclosed by actual use. Besides, there is a marked and very reasonable distinction to be taken between articles which require a high degree of skill, in order to determine their qualities, and those products of nature which may be tested by the most casual observer, upon simple inspection. In the case cited, if it could have been shown that the owner, at the time the machinery was brought to his factory, had full notice of its defects, and knew how it would work, and had still allowed it to be put up as in compliance with the contract, it is difficult to conceive what right he could have to complain. But after the machinery had become a fixture, and the parties could not be put *in statu quo*, it might seem a hardship to deprive him of the damages he had really sustained in consequence of unknown defects, although he had received it as in fulfillment of contract, and hence, the Court might feel inclined so to relax the rule as to meet such a case. But to lay down so broad a doctrine as is there enunciated, is to carry the matter entirely too far, and to greatly impair the authority of the decision; especially is this the case where it is in conflict with the decisions of other Courts of equal ability.

We proceed to cite the authorities which hold a doctrine contrary to what is claimed for this case.

In *Groning* v. *Mendham*, assumpsit for clover seed sold by sample, the defense was, that the order was for seed of the finest quality, and that the seed delivered was inferior; but Lord ELLENBOROUGH held, that the defendant must show an offer to return the seed, upon discovering that it was not the article ordered, before he could object to its inferiority. 2 Eng. C. L. 104.

The doctrine contended for by us, has been long settled in *Kentucky* and *New York*. In *Dana* v. *Boyd*, 2 J. J. Marsh. 588, the plaintiff had supplied the defendant with wool to be manufactured into cloth, according to the terms of a written contract, and brought his suit for a breach by the defendant. It appeared that the defendant had manufactured the goods and delivered them to the plaintiff, but the latter objected to them at the time, on account of their inferior quality, and gave a receipt with such objections stated in it. The Court held the following language: "But it may now be considered as a settled, general rule, that where the employer or purchaser receives the goods, he thereby not only waives the defects, but is concluded thereby, so that he cannot recover thereafter for any patent and known defect. * * * * But when the defects are palpable, and are perceived at the time, he must reject the goods, and set aside the contract *in toto*, and go in for their full value, and cannot be

allowed to accept and then bring his action for the bad quality. The seller or manufacturer may, in many cases, if the goods be rejected *in toto*, supply them with others; and in all cases, he may elect to pay the whole price, and make the best he can of the rejected articles in the market; and he ought not to be compelled by the employé's acceptance, to part with the goods, running the risk of such reduced price for them as a jury, in an action for the defect in quality, might allow. * * * * It results, then, that the plaintiff, by the reception of these goods, waived the right to recover for the bad quality thereof, and his having excepted to the bad quality at the time, did not preserve his right to recover for it." This reasoning is peculiarly applicable to the case before the Court. Had the appellants refused to take the corn from *Watson's* warehouse, the appellee would have refused to take it on his contract with *Watson*, but if the appellee is compelled to pay damages, he is driven to sue *Watson* on his contract, and it would be very questionable whether he could recover, because it would appear that he had not only taken the corn, but actually sold it as of merchantable quality.

It will be observed that the language of the third instruction given for the appellee, to which such strong objection is made, is taken from the opinion of the Court, in *Dana* v. *Boyd*, *supra*.

*O'Barmon* v. *Relf*, 7 Dana, 320, was a similar case, and the Court, after granting a rehearing upon a very able and earnest petition, hold that a covenant to deliver goods or chattels of a particular description or quality at a future day, is discharged by the delivery of any description or quality which the covenantee accepts, and having inspected them, or having a fair opportunity to do so, he can maintain no action afterwards on account of defects of quality; and in this respect, contracts of this description differ from contracts of warranty upon executed sales. The doctrine of these cases was recognized in *McKibben* v. *Bakers*, 1 B. Mon. 120, and expressly affirmed in *Kerr* v. *Smith*, 5 *id*. 552. We ask the attention of the Court to this latter case, as being identical in principle, with the one at bar. *Smith* had sold his crop of tobacco to *Kerr* under a special contract, and *Kerr* appears to have accepted it and given receipts that it was inferior in quality, and specified a lower price in them than that fixed by the contract. The Court held, that as the tobacco was delivered in a loose state, so that its condition could be ascertained, and the vendee received it, he could not object to its quality, or take it at less than the contract price.

*Sprague* v. *Blake*, 20 Wend. 61, contains a lucid exposition of the doctrine for which we contend. There, the plaintiff sold his wheat crop, of between three hundred and four hundred bushels, then partly threshed, to the defendant for one dollar per bushel, and agreed that it should be merchantable, and to deliver it at a specified place on *Seneca Lake*. Subsequently a part of the wheat was delivered, accepted, and paid for, and the residue, by a new agreement, was to be delivered at a warehouse in another place. One *Morgan*, the warehouseman, was the defendant's agent to receive wheat that season, but was not present when twenty-seven and forty-eight one hundredth bushels was delivered, but it was received by his servants. On opening the first bags, one of them told the plaintiff it was bad, but it was put into a bin containing six hundred or seven hundred bushels of other wheat. It appeared that the wheat was greatly inferior, and worth but 33 cents per bushel; but the Court instructed the jury that if they were satisfied that the wheat was received by the

defendant or his agent, they would find for the full contract price. They found a verdict for the full contract price accordingly. This ruling was held correct, and the Court, among other things, say: [Here followed the quotation as found in the opinion of the Court.]

The principles established in this case, which are amply sustained by sound reasoning, we deem conclusive upon three points in the case at bar:

1st. That the agreement to deliver merchantable corn, being executory, does not amount to a warranty express or implied.

2d. That the acceptance of the corn by the appellants' agent, *Averett*, who was authorized to receive it on cars, is binding on them; and,

3d. That the acceptance of the corn, with a full knowledge of its inferior quality, is a discharge of the contract.

But even if the contract should be construed to be a warranty that the corn was merchantable, then we insist, that it being a general warranty, it did not cover the defect complained of, because that defect was apparent and notorious. In *The President, &c.* v. *Wadleigh*, 7 Blackf. 104, Judge DEWEY says: "The general principle is, that open, visible defects or qualities of goods sold and warranted, are not reached by the warranty, though they are inconsistent with its terms, for the seller is not supposed to warrant against defects and qualities whose existence is clear to the buyer and everybody else. * * * * The authorities referred to, show that the want of an ear to a horse, or of a roof to a house, is not a violation of a warranty that they were respectively perfect."

The counsel afterwards added the following:

*Smith*, in his Mercantile Law, at p. 519, says: "It sometimes happens that there is such a difference between the goods delivered and their description in the bargain, as would have justified the vendee in refusing to receive them; notwithstanding which, he has taken them into his possession and made use of them. In such a case it has been thought that his conduct would be taken to amount to a confession that the vendor had performed his contract, and that he would be obliged to pay the whole price stipulated."

*Hopkins* v. *Appleby*, 1 Stark. 478 (2 Eng. C. L. 183), is very much in point. We cannot better state the principle of law established by it than to quote the head-note or syllabus of the case: "The vendee of a merchantable commodity warranted to be of the best quality, proceeds to use it from time to time till the whole has been consumed, when the value of the article can be no longer ascertained, having given no notice to the vendor during this time of any defect in the article; and having deprived the vendor of the means of proving the value of the article by proper tests, the vendee is not entitled to recover on the ground of any alleged defect in the article."