## GANDY v. SEYMOUR SLACK STAVE COMPANY.

[No. 6,574.   Filed February 17, 1910.   Rehearing denied April 22,
1911.   Transfer denied April 3, 1912.]

1. EVIDENCE. — *Parol Evidence. — Written Contract. — Superadded
Term.*—Where a written contract for the purchase of staves contained no provision as to where inspection should be made, evidence of an oral agreement as to the place of inspection, made thereafter, related to a superadded term not inconsistent with the writing, and was not objectionable under the rule that all oral negotiations were merged in the contract.   p. 76.

2. SALES.—*Action for Price.—Delivery.—Burden of Proof.*—In an action for the price of staves sold, the burden was on plaintiff to show a delivery of the goods described in the contract.   p. 76.

3. SALES.—*Description.—Contract.—Performance.*—The quality is a part of the description of a thing agreed to be sold and the vendor is bound to furnish articles corresponding with the description.   p. 77.

4. SALES.—*Implied Warranty.—Quality.—Opportunity for Inspection.*—Where goods are offered for delivery under a contract, it is the duty of the vendee to inspect the same before acceptance, if he desires to save his rights in case the goods are of an inferior quality, as there is in such case no warranty of quality which survives acceptance.   p. 77.

5. CUSTOMS AND USAGES.—*Sales.—Quality of Article Sold.—Evidence.*—For the purpose of determining whether staves sold under a contract were No. 1 or No. 2 grade, it was competent to show the custom of the trade as to the meaning of such terms.   p. 77.

6. CUSTOMS AND USAGES.—*Sales.—Instructions.—Invading Province of Jury.*—In an action to recover the price of staves sold under a contract calling for No. 1 and No. 2 staves, where plaintiff's president testified that the grades were fixed by the manufacturer, and there was evidence to support defendant's contention that the grades mentioned were those established by a cooperage manufacturers' association, an instruction which told the jury that, if it found such contract to have been entered into, the grades named therein were the grades known and recognized by those engaged in the manufacture and sale of cooperage stock at the place where the staves were manufactured, took from the jury the question as to what the terms used in the contract meant and was erroneous.   p. 77.

7. SALES. — *Fraud. — Proof. — Instructions.* — Fraud need not be proved by direct or positive evidence, and an instruction, in an action for the price of goods sold, which told the jury that defend-

ant had the burden of proving the defense of fraud by positive and specific affirmative proof, was erroneous. p. 78.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by the Seymour Slack Stave Company against Oscar Gandy. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Thomas R. Marshall, William F. McNagny* and *P. H. Clugston,* for appellant.

*Merrill Moores, Andrew A. Adams, Walter Myers* and *John Ogden,* for appellee.

ROBY, J.—This action was brought by appellee against appellant to recover the purchase price for certain hoops and staves. The complaint is in three paragraphs. The first two count on written contracts, and the third on a verbal contract. The contract, which is the basis of the first paragraph is as follows:

> "This contract and agreement made this 13th day of January by and between the Seymour Slack Stave Company, of Seymour, Indiana, a corporation of the state of Indiana, parties of the first part, and O. Gandy & Co. of Churubusco, Indiana, parties of the second part witnesseth: That for and in consideration of One Dollar in paid by the parties of the second part, receipt of which is hereby acknowledged, the parties of the first part, agree to sell and ship to the order of the second part the following slack cooperage: 1,500,000 28½ inch No. 1 elm staves, cut six staves to 2½ inch in thickness at $7.50 per thousand. 1,000,000 28½ inch No. 1 hardwood staves, cut from maple, beech and oak, five staves to 1⅞ inch thickness, at $7.00 per thousand. 1,000,000 30 inch No. 1 hardwood staves, cut from maple, beech and oak, five staves to 1⅞ inch in thickness, at $7.00 per thousand. 3,000,000 28½ inch No. 2‑elm staves to contain all the meal grade staves, at $4.50 per thousand. 200,-000 28½ inch No. 2 hardwood staves to contain all the meal grade staves, at $4.00 per thousand. 200,000 30 inch No. 2 hardwood staves, to contain all the meal grade staves, at $4.00 per thousand. The above stock is to be shipped on orders of the said second parties in about equal monthly amounts from March 1st 1904, to

March 1st 1905. Prices named are net cash in thirty days from date of invoice free on board cars at Seymour, Indiana. In witness whereof,'' etc.

In the second paragraph it is averred that the contract sued on is in the possession of defendant, who refuses to produce the same or a copy thereof, but ''that the said contract calls for the sale by the plaintiff to the defendant on board of cars at Seymour, Indiana, of mill run elm staves at $6.75 per thousand, and hardwood staves at $6.25 per thousand, the same to be shipped on orders of the defendant as directed in said orders; that said orders were on printed forms of the defendant and stipulated that the stock ordered was to be loaded on cars by plaintiff and billed out in the name of O. Gandy & Co., as shippers, and without any posters or cards either inside or outside of said cars.''

In the third paragraph it is averred ''the plaintiff and defendant entered into a verbal contract where the plaintiff was to sell to the defendant mill run staves at $6 per thousand, six foot hoops at $7.50 per thousand, mill run heading at five cents per set; and mill run heading at four and one-half cents per set; all to be delivered to the defendant on board of cars at Seymour, Indiana, upon the order of the plaintiff.''

Delivery of goods is averred, and no question is made as to the sufficiency of the pleadings. The answer is in three paragraphs, general denial, payment and a paragraph admitting the execution of the contracts sued on, and that the defendant, from time to time, sent written orders to the plaintiff for the shipment of carloads of staves to persons named in various parts of the United States; that all staves of the kind described in the contracts, made in the United States, are graded according to the standards adopted by the National Slack Cooperage Manufacturers Association; that both parties were acquainted with the grades so established, and contracted with reference thereto, and in making said contracts by the use of the terms No. 1 and No. 2, and other

Gaudy *v.* Seymour Slack Stave Co.—50 Ind. App. 72.

technical terms therein, meant to and did describe the
staves according to such grades; that all of the staves deliv-
ered were shipped from the city of Seymour; that defendant
did not live in said city and did not make any inspection of
the shipments, but relied on the contracts and believed that
such shipments conformed thereto, ''And the defendant
says that an inspection of said staves at the point of ship-
ment would not have revealed the defects therein hereinafter
pointed out, for the reason that the plaintiff at its factory
made said staves so shipped into bundles. That said bundles
were securely fastened at either end by ropes or twine.
That each of said bundles contained fifty staves and that it
was impossible to tell from the inspection of the outside of
said bundles the kind or quality of staves contained therein,
as there were but the two outside staves in each bundle
which were exposed to view, and to determine the kind or
quality of the other forty-eight staves in each bundle it
would have been necessary to cut the bundle open and take
it apart. And the defendant says that the plaintiff cunning-
ly contriving and intending to cheat, defraud and impose
upon the defendant as to the kind and quality of staves con-
tained in said bundles and to avoid shipping upon defend-
ant's said orders, staves of the quality and grade specified in
said contracts, devised and carried out the following plan
and scheme, that is to say, that the plaintiff put a few good
staves, and staves complying with said contracts, on the out-
side of the bundle, and then put staves which were not of
the grades specified in said contracts, and which were of less
value than the staves which were so specified, and staves
having no value whatever, in the inside of said bundles and
covered said inferior and defective staves up with said out-
side good staves, and thereby concealed such inferior staves
and made it impossible to discover them by inspection.''
Alleged defects in the staves delivered are described in
detail, and it is averred that because of them appellant's
customers would not receive nor pay him for said staves;

that he was compelled to make reductions to them; that appellee was at once notified thereof, and agreed to deduct such amounts from the contract price. It is then averred that the parties put a construction on said contract, the defendant notifying the plaintiff that he would deduct for the bad staves, to which the plaintiff agreed in writing; that acting under such advice he sold several cars at the best price obtainable, and notified defendant thereof and made deductions accordingly, designating when he made payments on what car said payments should be applied, and receiving notice from plaintiff that they had been so applied.

It is then averred that appellee has confused its accounts, and made double and incorrect charges; that appellant has paid all he owes except $1,460, which he is ready to pay. Trial by jury, with verdict for $3,323.83. The sum of $28.24 was remitted, appellant's motion for a new trial was overruled, and judgment rendered on the verdict. The contracts relied on do not provide in terms as to where inspection of staves delivered at Seymour should be made. Appellee introduced witnesses who testified that it was orally agreed that such inspection should be made at Seymour. Appellant objects to this evidence, on the

1. ground that all oral negotiations were merged in the written contract. The rule is correctly stated, but the testimony related to a superadded term not inconsistent with the writing, and it was therefore admissible. *Singer Mfg. Co.* v. *Forsyth* (1886), 108 Ind. 334, 9 N. E. 372; *Henry School Tp.* v. *Meredith* (1904), 32 Ind. App. 607, 70 N. E. 393.

2. The evidence relating to the place of inspection was conflicting, and the issue was for the jury. The burden was on appellee to show delivery of goods described.

The quality is a part of the description of the thing agreed to be sold, and the vendor was bound to furnish articles cor-

responding with the description. *Ricketts* v. *Hayes*
3. (1859), 13 Ind. 181, 189; *Pierson* v. *Crooks* (1889),
115 N. Y. 539, 22 N. E. 349, 12 Am. St. 831; *Miller
& Co.* v. *Moore, Sims & Co.* (1889), 83 Ga. 684, 10 S. E.
360, 6 L. R. A. 374, 20 Am. St. 329.

"If he [the vendor] tenders articles of an inferior qual-
ity, the purchaser is not bound to accept them. But if he
does accept them, he is, in the 'absence of fraud,
4. deemed to have assented that they correspond with
the description, and is concluded from subsequently
questioning it. This imposes upon the vendee the duty of
inspection before acceptance, if he desires to save his rights
in case the goods are of inferior quality. There is in such
case no warranty of quality which survives acceptance."
*Pierson* v. *Crooks, supra.*

Appellant gave shipping directions for over thirty cars of
staves, which were delivered at different times.

One question of fact was whether those instalments in
dispute correspond to the description. Other questions of
fact which were also determinable from conflicting
5. evidence had to do with inspection and acceptance,
and are not material to the point now under consid-
eration. In order to determine whether the staves were No.
1 or No. 2, as the case might be, it was necessary that the
meaning of such terms be understood, and to that end it was
competent to show the custom of the trade. *Prather* v.
*Ross* (1861), 17 Ind. 495; *Rastetter* v. *Reynolds* (1903),
160 Ind. 133, 66 N. E. 612.

In the first instruction given the court said: "If you
should find from the evidence that such contracts were
entered into between the parties you are instructed
6. that the grades named in the contracts are the grades
known and recognized by persons engaged in the
manufacturing, purchase and sale of cooperage stock at Sey-
mour, Indiana."

The president of appellee company testified that the grades were fixed by the manufacturer; that the buyer must take the grades so fixed, and that the staves in question were graded in accordance with the contract. The appellee cites, in the support of the instruction, cases where a contract was made for some article manufactured by the vendor, and known by a distinctive name given to it by him, as "Talbot Extra Fine Peas, Sieve 23-24" (*Waeber* v. *Talbot* [1901], 167 N. Y. 48, 60 N. E. 288, 82 Am. St. 712); "Two pound, Quail Tomatoes" (*Lawder & Sons Co.* v. *Mackie Grocery Co.* [1903], 97 Md. 1, 54 Atl. 634, 62 L. R. A. 795); "Iron Nos. 1 and 2 of the Poughkeepsie Furnace" (*Beck* v. *Sheldon* [1872], 48 N. Y. 365.)

The court in the last cited case clearly differentiates its facts from those involved in the case at bar, saying: "It was as if they had contracted with a farmer for 800 bushels of the yellow corn to be raised on his farm in a certain town, or 800 bushels of the winter wheat to be raised on a particular lot, or the apples from the trees in his orchard." The sale of 800 bushels of No. 1 yellow corn or 800 bushels of No. 1 wheat would be an altogether different proposition. The vendee would be entitled to the commodity specified. The instruction, taken in connection with the evidence, required the jury to find on this issue for the appellee, even though the staves marked No. 1 by appellee at Seymour were, in fact, culls.

It took from the jury the question as to what the terms used in the contract meant, and gave a construction to those terms which was in direct conflict with competent evidence, much of it furnished by appellees.

The court also submitted the issue of fraud made by the third paragraph of answer to the jury, upon an instruction as follows: "As to the charge of fraud in the third 7. paragraph of answer such charges can only be sustained by positive and specific affirmative proof, and the burden of such proof is upon the defendant. A fraud-

ulent intent is never presumed. When the facts of the case are consistent with either honesty and good faith or dishonesty and bad faith, the presumption of honesty and good faith will prevail.''

The instruction was wrong, ''fraud need not be proved by direct or positive evidence.'' *Wallace* v. *Matice* (1889), 118 Ind. 59, 20 N. E. 497.

There are a number of other questions in this record, but they may be eliminated at another trial, and are therefore not discussed.

Judgment reversed, and cause remanded with instructions to sustain appellant's motion for a new trial.

Myers, C. J., Rabb, Watson and Hadley, JJ., concur.

Comstock, J., not participating.

NOTE.—Reported in 90 N. E. 915. See, also, under (1) 17 Cyc. 721; (2) 35 Cyc. 565; (3) 35 Cyc. 216; (4) 35 Cyc. 229; (5) 12 Cyc. 1084; (6) 12 Cyc. 1103; (7) 20 Cyc. 129. As to implied warranty of quality in contracts of sale, see 102 Am. St. 607.