INTERSTATE MOTOR FREIGHT SYSTEM v. GASOLINE EQUIPMENT CO., INC.

[No. 16,185. Filed January 5, 1940. Rehearing denied February 15, 1940.]

*Fred I. King,* and *Warner, Norcross & Judd,* for appellant.

*Ralph B. Gregg,* and *Edward J. Fillenwarth,* for appellee.

STEVENSON, J.—This action was commenced by the appellee to recover upon a promissory note executed by the appellant as part payment for the purchase price and installation of a 15,000 gallon gasoline storage tank and equipment. The appellee's amended complaint alleged the execution of the note and payment of four monthly installments thereon; that there was yet due the sum of $616.26 principal, and interest at the rate of six per cent per annum from June 21, 1936, the date of default. The complaint also prayed an allowance of $300.00 for attorney's fees.

To this complaint the appellants filed an answer in two paragraphs, the first being in general denial, and the second a plea of payment. There was also a paragraph of answer denominated a "set-off" and a counterclaim in two paragraphs. The answer denominated a "set-off" admitted the execution of the note sued upon but alleged that said note was given as part payment of the purchase price for a 15,000 gallon gasoline storage tank and the complete installation thereof on the premises of the appellant in the city of Toledo, Ohio. It further alleged that the appellee had failed

to install said tank in a proper manner and had negligently failed to anchor the same, as a result of which the tank, on or about the thirtieth day of March, 1936, became dislodged, and floated out of the ground. That the appellee failed and refused to replace said tank and the appellant was required to and did spend $541.20 in replacing and repairing said storage tank. The counterclaim filed by the appellant claimed damages in the sum of $1,600.00 on account of the alleged failure to properly install and anchor said storage tank. To these paragraphs of "set-off" and counterclaim the appellee filed replies in general denial. On the issues thus formed the cause was submitted to the court for trial, and the court after hearing the evidence rendered judgment for the appellee on the note sued upon for $651.47, principal and interest, and $300.00 attorney's fees.

A motion for new trial was filed, overruled, and this appeal has been perfected. The appellant assigns as error in this court the overruling of the appellant's motion for new trial, and contends that the amount of recovery is too large, and that the judgment of the court is not sustained by sufficient evidence and is contrary to law.

The appellant first contends that there was no evidence offered as to the services rendered by the appellee's attorney and in the absence of such proof there can be no allowance for attorney's fees. The only evidence as to the value of the attorney's fees which appears in the record is the testimony of H. Nathan Swaim, who testified that he was a practicing attorney in Indianapolis and familiar with the fees charged by attorneys generally in actions for the collection of notes. A hypothetical question was then asked Mr. Swaim in which there was detailed the various steps which the attorneys had followed in the preparation

of the pleadings and the trial of this case. The witness testified, basing his opinion upon the facts recited, that the value of such services was $350.00.

While it is true that the appellee did not offer evidence in support of all facts assumed in the hypothetical question, yet the question detailed many facts with reference to the pleadings and taking of depositions and the trial of the case about which the court could take judicial notice. The pleadings were prepared and filed by the attorneys for the appellee and were before the court. The note described in the question was in evidence. The attorneys were present in court trying the law suit. It is apparent that the hypothetical question was addressed to and described these particular services.

It has been repeatedly held in this state that where the amount of attorney's fees is not fixed in the note, the amount thereof must be established by proper evidence. *Starnes et al.* v. *Schofield et al.* (1892), 5 Ind. App. 4, 31 N. E. 480; *Shoup* v. *Snepp et al.* (1899), 22 Ind. App. 30, 53 N. E. 189; *Lindley* v. *Sullivan* (1893), 133 Ind. 588, 32 N. E. 738, 33 N. E. 361. But where the note provides for the payment of attorney's fees, however, it is not incumbent upon the plaintiff to prove the actual employment of counsel by him where the attorneys are actually present in court seeking to enforce the collection of such obligation. 11 C. J. S. §653. As was said by the Supreme Court of Wyoming:

"The proof in this case shows that 10 per cent was a reasonable sum to be allowed, and this is the amount allowed herein by the court. We do not think it was necessary to introduce evidence showing the employment of counsel by respondent bank, or that a reasonable attorney fee was to be paid to them. Counsel for respondent are officers of the court and presumably appeared in court as

counsel representing their clients, and presumably their appearance' and the services rendered by them were with full authority to do so, either under an express or implied promise to receive reasonable compensation for such services.'' *Farmers State Bank* v. *Haun* (1924), 30 Wyo. 322 222 Pac. 45, 51.

The same principle is announced by the Supreme Court of Texas in the following language:

"It is held in these cases, and it is reasonable, that, when a note is sued on and the pleadings signed by an attorney, it is presumable that he had been employed to bring the suit, and that he will receive at least as much compensation as is provided for in the note. In the absence of attack, the note proved itself, arid the attorney's fees were a part of the note.'' *Rychener et al.* v. *McGuire* (1933), (Texas), 66 S. W. (2d) 413, 414.

We are accordingly of the opinion that the court in this case was not wholly without evidence upon which to base its finding for the allowance for attorney's fees on the note which formed the basis of the appellee's complaint. See *Pivot City Realty Co.* v. *State Savings, etc., Co.* (1928), 88 Ind. App. 222, 162 N. E. 27.

The appellant further contends that the evidence discloses a breach of an implied warranty on the part of the appellee which entitled the appellant to recover on its ''set-off''·and counterclaim. The appellant contends that under the terms of the contract by which the appellee undertook to furnish the gasoline storage tank and to install ''complete'' there was an implied warranty that the installation would be suitable for the uses intended and that the installation would be completed in a workmanlike manner. The appellant insists that under this rule of law the appellee was bound to anchor the tank in place by a method suffi-

cient to prevent its dislodgment and that having failed so to do, the appellee must respond in damages for the loss occasioned when the tank floated out of the ground.

This contention requires us to interpret the meaning of that portion of the contract embodied in the telegram quoting the price, which telegram reads as follows: "Will install Toledo job complete including meter pump for truck service for $1,285.00. Quotation does not include excavation for tank. Suggest you include this in your excavation contract at Toledo to secure lower price. Letter following." In the letter which followed this telegram nothing further was said about the method of installation other than that they would have the tank ready for operation in ten working days. The evidence discloses that pursuant to this contract the appellants made the excavation for the tank and immediately after it was set in place and the fittings completed, the appellants proceeded with the back fill. The tank was immediately put in use by the appellants and approximately thirty days thereafter the appellants signed the conditional sales contract covering the purchase of this tank. It is apparent to us that under these circumstances there is no implied warranty upon which the appellant can rely.

The contract between the parties was in writing and contained the stipulation that this tank and equipment would be "installed complete." The appellant relies upon and alleges a failure of the appellee to perform this part of the contract. If complete installation required an anchoring of the tank in place, then the agreement as written has been breached. If this amounts to a breach of warranty as contended by the appellant it is a breach of an ex-

press warranty. This precludes any oral or implied warranties. The rule is well settled that:

" 'Where a written contract of warranty is made, oral warranties and implied warranties are all merged in the written contract, and by its terms the parties must be bound, as in other cases of written agreements'." *Sullivan Mach. Co.* v. *Breeden* (1907), 40 Ind. App. 631, 637, 82 N. E. 107.

There is accordingly no implied warranty involved in this case.

The evidence further discloses in this case that after the tank was put in place in the excavation made for it by the appellant, the appellant immediately proceeded with the back fill. No objection was made to the appellee at the time because the tank was not anchored in place and no suggestion was made to them that such should have been done until more than two months had passed. It is our opinion that such conduct constitutes an acceptance of the merchandise as well as the quality of the workmanship involved in the installation. The rule is that:

" 'If he (the vendor) tenders articles of an inferior quality, the purchaser is not bound to accept them. But if he does accept them, he is, in the absence of fraud, deemed to have assented that they correspond with the description and is concluded from subsequently questioning it. This imposes upon the vendee the duty of inspection before acceptance, if he desires to save his rights in case the goods are of inferior quality. There is in such case no warranty of quality which survives acceptance'." *Gandy* v. *Seymour Slack Stave Co.* (1912), 50 Ind. App. 72, 77, 90 N. E. 915.

It is our opinion therefore that the court was warranted in finding that the appellants by accepting the

tank as installed and proceeding with the back fill might be deemed in law to have accepted the subject-matter of the contract and recognized the same as complete. Again, it was a question of fact for the court to decide as to what constituted complete installation as used and intended by the parties to the contract in suit. Testimony was offered by the appellant tending to show that in order to install the tank in a workmanlike manner, it was necessary to anchor the same by means of steel cables across the tank with each end embedded in concrete. The appellee on the other hand offered testimony of various men familiar with the oil business to the effect that similar tanks installed in the city of Toledo and elsewhere were not anchored and that proper installation did not require the same. The trial court was accordingly called upon to decide whether or not complete installation required that the tank in question be anchored. A finding against the appellant on the issues raised by the set-off and counterclaim is supported by the evidence in the record and we cannot say that such finding was erroneous. The installation of the tank in question in keeping with the customs and usages of the trade generally recognized as proper may be considered as incorporated in the contract and intended by the parties. *Baccari* v. *B. Perini & Sons* (1936), (Mass.), 199 N. E. 912.

Finding no reversible error, the judgment of the trial court is affirmed.