RAYL ET AL. *v.* GENERAL MOTORS CORPORATION.

[No. 18,114.   Filed November 5, 1951.]

609

*Marshall, Hillis & Hillis*; and *Curtis W. Roll,* both of Kokomo, for appellants.

*Henry M. Hogan,* of Detroit, Mich.; *Fell, Life & Levan*; and *John C. Fell* and *Max C. Shirley* (of counsel), all of Kokomo, for appellee.

CRUMPACKER, J.—The appellee, the plaintiff below, claiming to have bought and paid for 2,752 radio cabinets manufactured by the appellants, sued to recover the purchase price thereof alleging that latent defects made them unfit for use and thus breached an implied warranty as to their merchantability. The appellants defended on the theory (1) that the cabinets involved were made in accordance with a sample, blueprints and specifications furnished by the appellee; (2) that such materials and parts not particularly specified by the appellee were standard parts and materials purchased by the appellants on the open market from reputable dealers; and (3) that the appellee bought each of said cabinets subject to its own inspection with the right to accept or reject and that all of the cabinets in controversy were so inspected and were thereupon accepted and paid for by the appellee. The case was tried to the Howard Circuit Court which found for the appellee in the sum of $12,356.55 and, over the appellants' motion for a new trial, rendered judgment accordingly. This appeal assails said judgment on the theory that the court's decision is not sustained by sufficient evidence; that such decision is contrary to law and that the assessment of the amount of recovery is erroneous in that it is too large.

A study of the appellants' brief in relation to the requirements of Rule 2-17(e), 1949 Revision, limits our consideration of this appeal to the following questions.

Appellants' Proposition 1. By its complaint the appellee sought relief for a breach of an implied warranty that the radio cabinets it bought from the appellants were merchantable. That the undisputed evidence discloses that it recovered on the theory of money had and received and therefore the decision of the court is contrary to law under the generally accepted doctrine that one must recover on the theory of his complaint or not at all. There can be no doubt that the appellants' contention as to the theory of the complaint is correct and it is also apparent, from a review of the evidence, that the court assessed recovery in the amount of money the appellee paid for the cabinets the court found to be unmerchantable. That is the precise relief the appellee sought by its complaint and it is made a proper remedy for breach of warranty by the Uniform Sales Act of Indiana, § 69 of which provides that: "(1) Where there is a breach of warranty by the seller, the buyer may, at his election: . . . (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and *recover the price* or any part thereof which has been paid." (Emphasis supplied). Burns' 1951 Replacement, § 58-507. The only case the appellants cite in support of their contention is *Indiana Business College* v. *Cline* (1918), 187 Ind. 416, 119 N. E. 712. This decision was filed 11 years before the adoption of the Uniform Sales Act, above quoted, and cannot be considered as controlling the question under discussion.

Appellants' Proposition 2. The undisputed evidence discloses that the cabinets in controversy were made in conformity to sample and according to plans and specifications furnished by the appellee and it is established law that an implied warranty does not extend to or cover defects resulting from or occasioned by faulty specifications. In support of this contention the appellants cite *MacKnight Flintic Stone Co. v. Mayor, etc., of New York* (1899), 160 N. Y. 72, 54 N. E. 661 and *MacRitchie v. City of Lake View* (1889), 30 Ill. App. 393. We are in entire accord with these holdings but in the case before us there is evidence in the record tending to prove that the defects of which the appellee complains were in no way due to or the result of faulty plans or specifications. The fact in this regard was exclusively within the province of the trial court to determine and its finding against the appellants' contention, being supported by substantial evidence, is final.

Appellants' Proposition 3. An implied warranty does not survive inspection and acceptance by the buyer regardless of the fact that the defect is latent. The appellants contend that this principle of law, announced in *Gandy v. Seymour Slack Stave Co.* (1912), 50 Ind. App. 72, 90 N. E. 915; *Ricketts v. Hays* (1859), 13 Ind. 181. 1 *Williston on Sales,* § 234, pp. 600, 601, compels a decision in their favor because the undisputed evidence shows that every cabinet in controversy was inspected, accepted and paid for by the appellee and it was not until several months later that they were rejected as the result of a second inspection. Williston, upon whom the appellants strongly rely, limits or qualifies the above rule with these words: "In some cases, however, stress is laid on the fact that inspection would have revealed the defect. The provision

in the Sales Act excludes warranty after examination of the goods only 'as regard defects which such examination ought to have reached.'" *Williston on Sales, supra.* Whatever the common law rule may be, it seems to us that the question of inspection and acceptance and their effect on warranties must be resolved under the terms of the Uniform Sales Act adopted in this state in 1929. See Acts of 1929, Ch. 192. Sec. 47 of said Act, being Burns' 1951 Replacement, § 58-307, provides: "Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." Sec. 49 of said Act, being Burns' 1951 Replacement, § 58-309 reads as follows: "In the absence of express or implied'agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." We think the evidence shows without contradiction that the appellee inspected and accepted the merchandise in controversy but clearly these facts constitute no bar to the present suit unless the appellee failed to give the appellants notice of the alleged breach of warranty within a reasonable time after it knew or ought to have known of such breach. There was ample evidence before the trial court from which it could have concluded that the breach of warranty of which the appellee complains consisted of latent defects, concealed by stain and varnish, of which

it had no knowledge at the time of its original inspection and of which it notified the appellants as soon as such defects became apparent. The decision indicates that the court so concluded. The holdings in the Gandy and Rickett cases, so far as they are in conflict with the provisions of the Uniform Sales Act, *supra,* necessarily yield thereto as said decisions were filed in 1912 and 1859 respectively.

Appellants' Proposition 4. The seller is not liable for latent defects in the materials used in the manufacture of the goods he sells unless he negligently or with knowledge of such defects selects them.

In support of this proposition the appellants contend that there is no evidence in the record tending to prove that they knew of any latent defects in the materials used or that they were negligent in selecting them. That, on the contrary, the evidence shows that they used standard materials bought in the open market from reputable dealers. That the defects in the cabinets resulted from excessive moisture in the wood used which, as it dried out, caused the cabinets to pull apart at the joints or caused the panels to split if the joints held and that such excessive moisture content of the wood could not have been discovered by them in the exercise of ordinary care. There are some early cases which support this doctrine, three of which, decided by courts of other jurisdictions, are cited by the appellants. In Indiana, however, the rule is statutory and to the contrary where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment. Under such circumstances there is an implied warranty that the goods shall be reasonably fit for such purpose and an inspection and acceptance destroys the warranty

only "as regards defects which such examination ought to have revealed." Burns' 1951 Replacement, § 58-115. See also *Indestructible Wheel Co.* v. *Red Ball Body Corp.* (1935), 100 Ind. App. 150, 194 N. E. 738.

The parties stipulated, as evidence in this case, "That the defendants knew that the said 2,752 cabinets were to be used by plaintiff as radio cabinets and re-sold to the wholesale trade under its established trade name after plaintiff had installed radios in said cabinets." It was further stipulated that the appellants' business was the manufacture of wooden cabinets so stained, varnished and finished as to be suitable for use "as a piece of furniture in a home." Frank Rayl, one of the appellants herein, testified that the appellee did not specify the moisture content of the wood nor the kind of glue to be used in the manufacture of the cabinets in question but that they, the appellants, used their own judgment in that respect. There is other evidence to like effect. From this we think it is reasonable to infer that the appellee relied upon the appellants' judgment in the selection of the two materials which, under the evidence, seem to have been chiefly responsible for the defects in the finished product, as otherwise its specifications would have determined the matter. There is ample evidence that the presence of excess moisture and the use of ineffective glue in the cabinets' makeup could not be determined, before acceptance, without breaking them down and destroying their usefulness. We know of no rule of law holding that it is only defects that escape such an inspection that are covered by an implied warranty.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 2d 433.