CASE.

## Wood *vs* Weir and Sayre.

*Case* 113.

ERROR TO THE FAYETTE CIRCUIT.

*Malicious suit.    Probable cause.    Case.*

June 30.

CHIEF JUSTICE EWING delivered the opinion of the Court.

Case stated.

WEIR exhibited his bill in chancery, prepared by Sayre as his attorney, against Wood, his debtor, and principal in several liabilities, amounting in the aggregate to near $4,000, under the statutes of 1828 and 1838, (2 *Statute Laws*, 1441,) and (3 *Stat. Laws*, 116,) in which Wood is charged with a fraudulent intention to remove himself and estate, consisting of a house and lot in Lexington, and slaves and other personalties, or sell and dispose of the same to the injury, loss, &c. of Weir, and prayed that "Wood might be enjoined and restrained from removing himself or his effects from the Commonwealth, until he secure your orator in his said debts and securityships, and that the Sheriff of Feyette county be directed to *take into his possession*, said *house and lot*, furniture and slaves, to indemnify and secure your orator, and *hold*

the same till the further order of the Court, unless the said Wood will give bond with sufficient security, in at least the penalty of $4,000, to *pay* your orator his said debts, and to indemnify and secure him against loss, and to *release* him from his said suretyships." Upon this bill, exhibited by the defendants to two Justices of the Peace, empowered to grant injunctions, &c. an order was granted to the Clerk, to issue a subpœna with an injunction, directed to the Sheriff of Fayette county, *as prayed for in the bill*, on the complainant's executing bond, &c.

A subpœna, with the injunction and order to the Sheriff prayed for, was accordingly issued and placed in the hands of the Sheriff, who in pursuance of its mandate, took possession of the house and lot, inducing Wood and his wife and children to go out and seek shelter elsewhere in the city, when he locked the doors and nailed up the windows of the house. Wood and family remained out for several days, and until, on the motion of Wood, the Circuit Court quashed so much of the order as required the Sheriff to take into his possession his house and lot.

Whereupon Wood brought an action on the case against Weir, and Sayre, his attorney, for a malicious suit, or rather, for obtaining a malicious, vexatious and illegal order, by which the plaintiff and his family were wrongfully turned out of the possession of their dwelling.

The declaration avers, in substance, the filing of the bill by Weir as client, and Sayre as his attorney and counsellor, "falsely alledging that the plaintiff intended fraudulently to remove his effects from Kentucky, &c., whereupon they wrongfully and maliciously obtained from two Justices, authorized to grant injunctions and restraining orders, a judicial order, directing the Sheriff of the county, among other things, to take possession of the dwelling house, in which the plaintiff and his family then resided, unless he would give security in a *sum much larger than his indebtedness* to Weir, and the plaintiff being unable to give said security, the defendants *maliciously* and *tortiously* induced the Sheriff to turn the plaintiff and his wife and family out of their dwelling house, who did turn them out and take possession, in

WOOD
*vs*
WEIR & SAYRE.

WOOD
*vs*
WEIR & SAYRE.

the execution of said order, and lock the doors, leaving them to seek shelter in the commons, &c."

The defendants pleaded not guilty, and the jury having found for them, the plaintiff has brought the case to this Court, by writ of error.

To maintain an action for a malicious suit, as well as for a malicious prosecution, three things are necessary to be made out by the plaintiff. 1st. A want of probable cause—2d. Malice in the defendant—and 3d. Damage to to the plaintiff. Malice may be implied from the want of probable cause, but this implication may be explained and repelled by facts and circumstances indicating a fair and legitimate purpose, and honest pursuit of a claim believed to be just. So, though there be probable cause, and even just grounds for the suit, if, from bad intentions or malicious motives, an illegal, oppressive and vexatious order is procured from Justices of the Peace, by the attorney or client, or both, without probable cause or excuse, by which damage is done to the defendant, an action will lie against them both. And malice may be implied from the want of probable excuse, or grounds for the order, which may be explained away or repelled by counteracting circumstances, as in the case of a suit. If it could not be maintained, then there might be a most grievous injury without a remedy. The Justices could not be rendered liable, for a mere error of judgment, without motive, and if the attorney, or attorney and client, if they acted in concert, cannot be made liable, then would the injured party be without redress.

It is said that Justices, in this form of action, can be made liable for *a malicious conviction, Burley* vs *Bethum,* (5 *Taunton,* 580,) and we cannot doubt that they may be rendered liable for a *malicious* and vexatious order; if so, most certainly should an attorney be rendered liable for the malicious *procurement* of such an order.

Justices of the Peace, it is known, are in the general, not lawyers, nor acquainted with the substance or forms of judicial orders, and but illy advised of the proper occasions, or cases, in which they should be granted. *Ex necessitate rci,* under our judicial system, they have been entrusted with the power to grant them, but in the gener-

*Margin notes:*

To maintain an action for a malicious suit, it is necessary for plaintiff to allege and prove want of probable cause; malice and damage to the plaintiff—the second may be implied from the absence of the first, but this implication may be repelled by facts showing a lawful and honest purpose.

If an attorney, from malicious motives, procure from Justices of the Peace, an unauthorized order of attachment, operating

al, distrustful of their own legal qualifications, they place much reliance on the counsel of the attorney, as to the propriety of the order, and entrust to him its preparation. It would be strange, therefore, if the attorney, by art and contrivance, the abuse of the confidence reposed, and prostitution of his profession, should *procure* from the Justices,· from *malicious motives* to the defendant, an illegal and oppressive order by which injury accrues to the defendant, if the attorney could not be made liable for the wrong. It is contended, that *this rule* will expose attorneys to perplexing litigation, to the manifest injury of the profession. If it should, the law knows no distinction of persons; a different rule cannot, as to them, be recognized by this Court, from that which is applicable to others. Besides, this is a numerous class, powerful for good or evil, and holding them to a strict accountability, will have the effect to exalt and dignify the profession, by purging it of ignorant, meritricious and reckless members.

So much of the order in this case as directs the Sheriff to *take into his possession* the *house* and *lot* of Wood, is clearly illegal, oppressive and unauthorized by the allegations of the bill or the statute. We do not understand the order as meaning the same thing as an order to *attach*, as applicable to real estate. Lexecographers have defined the word attach, or the levy of an attachment or execution, in *reference to personal or moveable property*, which was alone subject to an attachment or levy, by the principles of the common law. The safety and security of such property, required that it should be seized and taken into the *actual possession* of the officer, and nothing less than a seizure and actual exclusive possession of such property, rendered the levy complete. But under our statutes, which subjects real estate to the payment of debts, and to attachment to that end, this Court has frequently determined that the levy of an execution or attachment upon such estate, does not require that it shall be taken into the actual exclusive possession of the officer, which cannot, as we conceive, be done without turning the occupants out; nor does it require, or even authorize the occupants to be ousted, but is rendered

Wood
*vs*
Weir & Sayre.
injuriously upon
def'ts rights, he
is liable as well
as his client.

The statute authorizing attachments to be levied upon lands by the order of a Court of Chancery, does not authorize the taking of possession and turning out defendant or other person under him, unles perhaps in case of an apprehended injury to the property itself— nor is such an act necessary to give efficacy to the service of the attachment.

WOOD
*vs*
WEIR & SAYRE.

complete, by a special entry upon the property, and an annunciation of the levy, by which, without an ouster or change of the actual possession, it becomes *tied* and *fixed* against alienation, and a lien raised in favor of the judgment or attaching creditor.   To take other or further possession of real and immovable property, is not, in the general, necessary to the security of the property or the preservation of the lien. · But the order to the officer to take *into his possession* the house and lot, must be understood as a command to him to take the same into his actual and absolute possession, which can no more be done without turning the occupants out, than a command to deliver possession to another can be executed without ousting those in possession.   An actual and absolute possession can no more be in two or more at the same time, than two bodies can be made to occupy the same space at the same time.

But if the command to attach, and the command to take into possession, may mean the same thing, the former order *pursues* the language of the statute, and had a well known interpretation given to it, in its application to real estate, which was well understood by the officers of the law, and was not therefore misleading ; while the latter order was a *departure* from the language of the statute, was not *defined* by this Court, and was consequently *liable* to be *misunderstood* by the officer, as to the mode of its execution, and was misunderstood by him, if a special limited entry and possession was merely intended ; and this departure from the statute caused all the injury that accrued.   We will not say that an order might not be rightfully granted, requiring the Sheriff to oust the occupants and take into his possession real estate, but to justify such an order, there should be grounds alledged in the bill, authorizing the apprehension that the property will be injured or destroyed by them, if they are permitted to remain.

There is also another glaring departure from the statute, in the conditions and terms of the bond, which Wood was required to execute with sureties, to entitle him to retain the possession of the attached effects.   The statute requires that the property attached "shall be restored to, or permitted to remain with the possessor on his execu-

tion of a bond with sufficient surety, with adequate penalty to perform the decree, *or* to have the *property forthcoming*, to *answer* the *decree* that may be made in the cause." The condition of the bond required by the order is, "that said Wood shall *pay* the complainant his said debts, and *indemnify* and *secure* him against loss, and *release* him from his said *suretyships*." The exaction in the bond required, is strikingly more severe than the bond required by the statute. While he might readily obtain sureties to perform the last alternative of the bond re-required by the statute, to have the *property attached forthcoming to answer the decree*, if he could find any who had confidence in his integrity, he might not be able to find any one who would be willing to become bound to *pay* his *debts*, or *release* the complainant from an unknown amount of suretyships for Wood, to pay and release whom, might require much more than the property attached was worth.

It is true that this oppressive exaction in the condition of the bond, is not alledged in the declaration as a substantive ground of complaint against the order. The objection against the bond is, that it required "security to be given in a sum much larger than Wood's indebtedness to Weir," and not that terms and conditions are exacted more oppressive than those required by the statute. It is contended, and we think the position is sustainable, that the averment of the single objection of excess in the penalty, must be regarded as a waiver of objection to the terms and conditions of the bond, and that the illegal and oppressive terms of the bond cannot be relied on as a substantive ground of complaint against the order, as the declaration now stands. But though it cannot be so relied on, we are not prepared to admit, that it may not be proven and relied on as a circumstance, connected with others, tending to show *malice* in the procurement of the order. Other facts and circumstances not averred, connected with and extraneous the procurement of the order may certainly be proven, and we can perceive no good or solid reason, why the exaction of an illegal and oppressive bond may not be proven, though not averred, as evidence of a bad intention and malicious motive,

reaching beyond the security of the debts out of the property attached, or the fair and legitimate prosecution of the complainant's rightful claims.

Upon the whole, we think that the order was irregular, illegal and unauthorized by the allegations of the bill, or the authority of the statute, and was procured without probable cause or legal excuse, and that from the want of probable cause or excuse, connected with the oppressive and illegal terms exacted in the bond, unaccounted for or explained, malice might and should have been implied by the jury, and the plaintiff has sustained damages to some amount.

Indeed, it is said that *crassa ignorantia* is evidence of malice, and we say especially in one that should know better, *Brooks* vs *Warwick*, (2 *Starkie's cases*, 389,) (2 *Starkie on Evidence*, 915.) And there is reason in the rule, as the institution of a grossly illegal and unauthorized prosecution, or the obtainment of a grossly illegal, unauthorized, unnecessary and oppressive order, can be fairly ascribed, in the general, to no other than a bad motive, or malicious intention. Sayre, the attorney, might have understood the plain provisions of the statute under which he instituted the proceedings, if he examined it; and if he did not, he proceeded heedlesly of the consequences to the defendant and his family, and without other explanatory and countervailing circumstances than those adduced, it would seem, ought not to be permitted entirely to escape from all liability. As to Weir, the client, if he proceeded under the advice of his counsel, which he confided in and honestly believed to be correct, being ignorant as it may be presumed, of the law, and of the forms of judicial proceedings, the implication of malice, arising merely from the want of probable cause, or *crassa ignorantia*, which would justify a finding against him, may be repelled.

It will be perceived from what has been said, by reference to the instructions given by the Circuit Court at the instance of the defendants, that some of them were misleading and erroneous, and particularly the three following:

1st. "That the order to the Sheriff to take possession, or rather, 'to take into his *possession* the house and lot,' to use the language of the order, is the same in meaning and effect as to *attach*, and neither of them required the Sheriff, in the execution thereof, to turn the plaintiff out of the use and enjoyment thereof."

2d. "That in order to find a verdict against Weir, they must believe from the evidence, that in asking for the order he did, he acted *maliciously*; and in order to find a verdict against Sayre, they must find that he knew the order to be illegal, and procured it to be issued *maliciously*, against the plaintiff, Wood, and not for the purpose of securing what he believed to be the just rights of his client against a fraudulent debtor."

3d. "The Court instruct the jury that the order having been obtained from two Justices of the Peace, authorized by law to grant restraining orders, conduces to prove that there was no malice on the part of the defendants in obtaining it."

As to the first of the foregoing instructions, while we agree that the order to *attach*, according to the interpretation of the term given by this Court, and the practice of the country, did not require, or even authorize the occupants of real estate to be turned out by the officer, we believe and insist that the order "to take into his possession," not only *authorized*, but to execute the order fully, according to its command, *required* the ouster of the occupants; and if it did not, it was susceptible of being so understood by the Sheriff and Wood, and was so understood by both, and caused all the injury that accrued. As to the second instruction, although not strictly incorrect in the legal principle which it propounds, that malice must be shown, yet without explanation, as to the right of the jury to imply it from the want of probable cause or the gross irregularity of the order, it was misleading, and most likely did mislead the jury. They might have understood, and probably did, that express malice must be proven.

Nor can we admit that the signing of the order by two Justices authorized to grant restraining orders, in all cases and under all circumstances, "conduces to prove

*Margin note:* WOOD *vs* WEIR & SAYRE.

*Margin note:* The fact that Justices of the Peace issued an illegal order of attachment, does

not conduce to
show that com-
plainant or his
attorney acted
without malice
in procuring it.

that there was no malice on the part of the defendants in obtaining the order."

The affidavits of the plaintiff averring the discovery of parol evidence having an important bearing on the case, though not sufficient in itself alone to authorize a new trial, adds strength to the conclusion to which this Court has arrived, that a new trial should be granted.

It is, therefore, the opinion of this Court that the judgment of the Circuit Court be reversed, and cause remanded, that a new trial may be granted.

*Robertson* for plaintiff; *Robinson & Johnson and Wool-ley* for defendants.