## Hamersley Manufacturing Company v. Lobaco Company.

(Decided February 19, 1926.)

### Appeal from Lawrence Circuit Court.

1. Sales—Buyer of Waxed Wrapping Paper Held to Waive Defects by Paying for it.—Where baker ordered waxed wrapping paper, used it and paid for it; he waived defects, if any, and became liable for contract price.

2. Sales—Where Bakery Burned, Owner who had Accepted Part of Order of Paper Held to Waive Defects in Other Part.—Where baker ordered wrapping paper, with his ad printed thereon, to be sent in two shipments, and used and paid for first half, after which bakery burned, and he refused to receive other half, he could make no complaint as to second half, which was manufactured at same time and was of same quality as first; being deemed to accept whole order by using and paying for part delivered.

3.    Sales—Instruction as to Recovery on Counterclaim in Action for
      Contract Price of Waxed Wrapping Paper Held Improper.—In
      action for contract price of waxed wrapping paper, part of which
      had been used and paid for, instruction to find for defendant on
      counterclaim for loss due to defective paper, without giving
      standard for measuring such damages, held error.

C. L. MILLER for appellant.

FRED M. VINSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Both the appellant and plaintiff below, Hamersley Manufacturing Company, and appellee and defendant below, the Lobaco Company, are corporations, the former incorporated under the laws of New Jersey and the latter under the laws of Kentucky. The one manufactures self-sealing paper for wrapping bread for the market, and the other is engaged in the baking and furnishing of bread for the market. On November 13, 1918, defendant ordered of plaintiff 5,000 pounds of the self-sealing or waxed paper that it manufactures, to be shipped one-half as soon as possible, and the other half in 45 days after the shipment of the first one, and that order is known in this record as No. 2133. Each of them was shipped and the paper printed with defendant's advertisement thereon at the times required by the order, and there is no complaint in this case as to any delay or other violations of the contract with reference to the times of shipment. On the 24th day of January, 1919, part of the first half of that order was shipped and four days thereafter the remaining portion of it was shipped, and the paper was used by defendant for the purposes for which it was ordered. On January 29, 1919, defendant gave plaintiff a second order for the same quantity of paper to be shipped, one-half as soon as possible and the other half three months thereafter, and that order is known in this record as No. 2195.

On February 25, 1919, defendant wrote to plaintiff making some complaint as to the waxing of the paper so that it would seal under the process by which it was put around the bread, and a direction to cancel prior orders was made in that letter. Defendant answered it suggesting possible defects in the machinery by which the

wrapping was done, and claiming that the paper was properly manufactured and suitable for the purpose for which it was ordered. Following that letter and on March 24, defendant wrote plaintiff a letter saying: "After going over your letters thoroughly and finding that it was our fault with the paper we feel that we are ready to go ahead with the order. We installed a new generator which is far above our capacity in voltage, and the wrapping machine has been overheated at all times. Kindly let paper come forward at once." Following that the second one-half of order No. 2133 was shipped. On March 29, two days after that shipment, defendant paid for the first half of order No. 2133, but it never paid for the second half, amounting to $469.30.

On April 24, 1919, the first half of order No. 2195, amounting to $515.47, was shipped and on May 19, 1919, defendant wrote plaintiff a letter acknowledging the receipt of that shipment, which arrived two days prior thereto, and also acknowledging the good quality of that shipment and stating that a check was enclosed for the payment of the last half of order No. 2133, but which was a mistake. Before the arrival of the time for the shipment of the second half of order No. 2195, and on July 5, 1919, defendant's bakery was destroyed by fire, but five days thereafter defendant paid plaintiff for the first half of that order, the second half having been manufactured at the same time as the first one with defendant's edvertisement printed on the paper. Defendant declined to pay for the last half of order No. 2195, and also for the same half of order No. 2133, and this ordinary action was filed by plaintiff against it to recover judgment for those two amounts, aggregating $930.24.

Defendant's answer contained, among other things, a counterclaim and set-off in which it relied on a cancellation of the last half of order No. 2195 by its letter of February 25, 1919, *supra,* and for that reason it was not liable for that bill. It furthermore pleaded 40% defectiveness in the entire order No. 2133 as well as prior ones thereto, and by means of which it was damaged in a total sum of $630.40. The reply denied the material allegations of the counterclaim and set-off and pleaded the letter, *supra,* of March 24, 1919, as a reinstatement of all the orders and as an abandonment of the cancelling letter. Evidence was heard, much of which was objected to by plaintiff, and under the instructions given by the

court, which were also objected to by it, the jury returned a verdict in favor of plaintiff for $175.00, thereby reducing plaintiff's debt $765.24, and from that judgment it prosecutes this appeal after its motion for a new trial was overruled.

Defendant relies upon an implied warranty by plaintiff that its paper was suitable for the purposes for which it was ordered, and which principle of law was not denied by plaintiff's counsel. He insists, however, and we think correctly, that defendant consumed the first half of order No. 2133 as well as prior ones with full knowledge of the character of paper it was using, and afterwards paid therefor, and that it thereby waived such defects, if any, and became liable for the contract price, and the cases of Young v. Wallace, 201 Ky. 30, and others referred to therein are relied on. Upon the precise point the opinion in the Young case said: "The rule is well settled in this state that if the purchaser, after inspection or reasonable opportunity therefor, accepts and appropriates to his own use merchandise contracted for, he is liable for the contract price and cannot claim damages or a deduction from the purchase price for a breach of warranty, implied or expressed. Kerr v. Smith, 5 B. Mon. 552; Jones Bros. v. McEwan, 91 Ky. 373; Bannon v. St. Bernard Coal Co., 18 Ky. L. R. 1050; Nelson and Bro. v. Overman & Shrader, and Overman & Shrader v. Nelson & Bro., 19 Ky. L. R. 161; Yeiser v. Russell, 26 Ky. L. R. 1151; Duckwall v. Brooks, 23 Ky. L. R. 1459; Vogel v. Moore, 27 Ky. L. R. 94; Gregory v. Weller, 116 S. W. 247; Rice v. Pulliam, 141 Ky. 10; Forsythe v. Russell, 148 Ky. 490; Columbia Malting Co. v. Glenmore Dist. Co., 150 Ky. 229, 150 S. W. 53."

"The matter is viewed differently in some jurisdictions, and counsel for appellee have cited several such cases to sustain their theory of the law of this case, but our rule is too firmly established to permit a departure therefrom upon less than very clear and convincing proof of its error, which is not presented."

The court, therefore, erred in admitting any evidence of damage growing out of the last half of order No. 2133 and prior ones that had been consumed and paid for, and also erred in submitting any such issue to the jury by its instruction.

The same doctrine operates to deprive defendant of the right to make any complaint as to any part of order

No. 2195, since it consumed the first half of that order and paid for it, and the other half which was manufactured at the same time and was useless for any other customer for the reason that the paper had defendant's advertisement thereon, was of the same quality and defendant declined to permit it to be shipped. There was left, therefore, the only issue upon which there was any evidence, although slight, to authorize the recovery of any counterclaim by defendant, the quality of paper composing the last half of order No. 2133. The letters to which we have referred contain absolute admission by defendant that the alleged defectiveness of that shipment did not in fact exist, but that the trouble was due to its defective machinery. However, it would not be absolutely concluded by such admission and its manager and other witnesses testified to enough to create a submissible issue but which could not exceed, under the pleadings, 40% of that bill.

The instructions given to the jury were entirely at variance with the principles above announced, and should not have been given over plaintiff's objections, nor was instruction No. 5 given by the court as the measure of recovery correct in any particular. It authorized the jury to return in favor of defendant on its counterclaim "such a sum as will reasonably and fairly compensate it (defendant) for the loss, if any, sustained by it by reason of the defective paper, if any," &c., without containing any legal standard by which the jury could measure the damages if it found that the paper was defective. Upon another trial, if the evidence is substantially the same, the court will peremptorily instruct the jury to return a verdict for plaintiff for the entire amount sued for, but to be credited by any sum which the jury might find under the counterclaim because of the defective condition of the last half of order No. 2133, if any, and give the correct instruction as to the measurement of that credit, and which is embodied in instruction (A) offered by plaintiff.

Wherefore, the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.