CASE 51—ACTION BY KNOXVILLE WOOLEN MILLS AGAINST GEORGE C. WALLACE AND OTHERS FOR BALANCE ON ACCOUNT.—JAN. 27.

# Wallace, &c. v. Knoxville Woolen Mills.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

SALE—ACTION FOR PRICE—DEFECTS IN MATERIAL—MEASURE OF DAMAGES—COUNTER-CLAIM—PLEADING—SUFFICIENCY.

Held:    1. Where defects in yarn sold to manufacturers of hosiery could not be ascertained until it was used in the regular course of business, the acceptance thereof does not preclude his right to counterclaim for the defects in an action for the price.

2. Where yarn sold to manufacturers of hosiery proves defective, the measure of damages is the difference in value of the yarn as it was contracted to be delivered and the yarn as it in fact was, and, in addition, such damage as was done to the machinery in giving it a fair trial, or such as occurred from loss of time in making the trial, provided ordinary care was exer-

cised by the purchaser, but no loss which might have been avoided thereby should be allowed.

3. In an action for the price of yarn sold to defendants, manufacturers of hosiery, special damages on account of injury to the machinery from defects in the yarn, and loss of time in making a trial thereof, were properly specially pleaded as a defense.

QUIGLEY & MOCQUOT, ATTORNEYS FOR APPELLANT.

In this action for $2,712.39 on an open account, appellants, by their answer and counterclaim admitted the correctness of the account sued on, and charged that they had made a contract, in September 1892, with appellee for the delivery to them of eight cases per week, of Nos. 11s and 13s of white hosiery yarns or cones, until 50,000 pounds in all should be delivered, the shipments to begin October 1, 1892; that the first lot shipped were defective and not up to the contract quality, of which they made complaint and continued to complain to appellee upon each week's shipment for some time; that appellee knew they contracted for said yarns for the purpose of operating their hosiery mill at Paducah, Kentucky; that in answer to their complaints appellee admitted the goods were not up to the contract requirement and sent their manager to Paducah to see what could be done to remedy the defects; that they used part of the yarn because they were compelled to, to keep their mill in operation, and because they were lulled by statements in answer to their complaints into believing that their claims would be adjusted; that appellee was a non-resident corporation with no property in Kentucky; also that appellee failed to make regular weekly shipments of the yarns by reason of which they were damaged $150, and by reason of the defective quality of the yarns they were damaged $850.

The court sustained a demurrer to all paragraphs of the answer except where it charged the failure of weekly shipments. An amendment was then filed alleging a payment of $1,962.39 on the account to which the court sustained a demurrer, and appellants declining to plead, further judgment was rendered against them for $600 from which judgment this appeal is taken.

While we admit as a general rule that the appellants, having received, accepted and used the yarns, they are liable for the full contract price, yet we contend there is, or should be, a difference between a sale of goods at one time, where the vendee has an opportunity to inspect them, and a sale or

Wallace, &c. v. Knoxville Woolen Mills.

contract for a sale of goods the delivery of which is to be by installments extending over many weeks.

We contend that if appellant received the goods as defective and used them as such after notification to appellee, they are only liable for their market value in their defective condition. Thomas v. Carpenter, 5 R., 612. National Oak Leather Company v. Armour-Cudahy Packing Co., 18 R., 499.

SIMRALL & DOOLAN, AND WHEELER & HUGHES, FOR APPELLEE.

POINTS AND AUTHORITIES.

1. The damages claimed by appellants in this case were not the natural or proximate result of the alleged breach of contract on the part of the appellee, and they are not such damages as were in contemplation of the parties at the time the contract was made. They are therefore not recoverable under the authority of Hadley v. Baxendale and numerous cases from this court.

2. The appellants have not by proper averments shown any breach of their contract with the appellee for which they are entitled to recover anything; on the contrary, they have shown that by their acceptance and use of the yarns shipped, they have waived any claim which they might have to compensation for alleged defects in the yarns. Jones Bros. v. McEwen, 91 Ky., 373; Duckwall & Co. v. Brooke, 23 Ky. Law Rep., 1459.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellee, the Knoxville Woolen Mills, instituted this action against appellants to recover $2,712.39, the balance due on an account for a lot of cotton yarn sold and delivered by it to them; appellee being a manufacturer of yarn in Knoxville, Tenn., and appellants being manufacturers of hosiery at Paducah, Ky., and buying the yarn for use in their factory. After the suit was brought, appellants paid appellee $2,015.05 on the account, and filed an answer and counterclaim as to the remainder of the account, in which they alleged these facts: They have a large plant, employing regularly about 100 persons, and a great number of machines engaged in the manufacture of hosiery, their weekly expenses

Wallace, &c. v. Knoxville Woolen Mills.

being about $500.  They are engaged in selling their pro-
ducts to retail dealers throughout the country, all of which
was well known to the plaintiff when the contract was made.
On or about October 1, 1902, they received from the plain-
tiff the first shipment of yarn in contest; the contract being
for the purchase of 50,000 pounds of yarn, to be de-
livered in weekly installments of eight cases until all was
shipped.    After receiving the first shipment and running
it into their machines in their plant, they ascertained that
the yarns were not of the character, quality, and kind agreed
to be furnished them by plaintiff under its contract, which
fact could not be ascertained until each one was run into the
machine.    They at once notified the plaintiff of the defective
character and quality of the yarn, complaining to plaintiff
of the quality of yarns that were being shipped.    The
plaintiff continued to make shipments and the defendants
repeatedly made complaint, and insisted that they should be
reimbursed on account of the defective quality of the yarn.
On November 3d, or about thirty days after plaintiff began
to ship the yarn, in answer to complaints the plaintiff wrote
the following letter:

"Knoxville, Tenn., Nov. 3rd, 1902.

"The Alden Knitting Mills, Paducah, Ky.

Gentlemen:—Yours of the first inst. received.    I regret
exceedingly that our yarns have not been giving satis-
faction.    This is the first complaint we have had for some
time, but the samples of yarn you submitted is certainly not
very good.    In one place it looks like a No. 6 had been
wound on to No. 11 or No. 12s.    And in another place, es-
pecially that of the knit sample, it looks like it had been
caused by a bad roller in the cotton mill.

"Our Mr. McKeldin wrote you last Saturday that he hopes
to be over early this week.    He expects to leave to-night

or to-morrow night, and I hope you will have no trouble in getting our differences reconciled, and our business relations continue pleasant.    We know we can make good yarn, and are doing it to-day.

"I have the pleasure of knowing your Mr. Toof, and am obliged to him for his interest in the matter.    I assure you, when our Mr. McKeldin sees you, he will make everything satisfactory.

Very truly yours,

"(Signed)    R. P. Gettys, V. P."

The officer of the plaintiff came to Paducah in a few days, and admitted that the yarns were not of the character, quality, and kind contracted to be shipped, and represented to defendants that he would undertake to adjust the claim for damages made by the defendants.    By reason of the representations of the plaintiff, the defendants were kept from making other contracts for the purchase of good yarn for their knitting, as they would have done but for this misrepresentation.    There is no market in the city of Paducah for the purchase of yarns.    The defendants made every effort to procure yarns for use in their plant when they ascertained that plaintiff would not comply with its contract.    They would not have used the yarn shipped by plaintiff, but for the representations of the plaintiff that it would make good yarns to comply with its contract, and that the defendants would be compensated for damages by reason of the defective character of the yarns.    It was further alleged that the plaintiff made these representations to the defendants with a fraudulent intent to mislead them, and to induce them to keep and use the portion of said yarns that were used, and to prevent them from exercising their rights under the contract, and that thereby the plaintiff practiced a fraud upon them, and lulled them into the belief that their claim for dam-

Wallace, &c. v. Knoxville Woolen Mills.

ages would be adjusted and paid.    The damages were fixed
at $850, and it was alleged that by reason of the nonresi-
dence of the plaintiff the defendants would be irreparably
damaged unless allowed to make their counterclaim in this
action.    The court sustained the demurrer to this part of
the answer, and entered judgment in favor of the plaintiff
on the account for the yarn.

In support of the judgment, we are referred to Jones v.
McEwan, 91 Ky., 373; 12 R., 966; 16 S. W., 81; 12 L. R.
A., 399, and Duckwall v. Brooke (23 R., 1459) 65 S. W.,
357.    In the first case the wheat was inspected and received,
and thereafter a counterclaim was presented on the idea
that the wheat was not as it was supposed to be.    The
court applied the rule that where the purchaser receives
the goods in discharge of the contract after inspecting them,
or after a fair opportunity to do so, he can not sue the
vendor to recover damages upon the ground that the goods
did not come up to the contract.    In the second case, five
carloads of corn were shipped.    Two were rejected, and
three were risked out.    Two other cars were sent in the
place of the two that were rejected, and it was held that
the purchaser took the risk of the three which he sent out
after inspecting them and knowing the condition of the
corn.    This case followed Jones v. McEwan, and is on all
fours with it.    On the other hand, in National Oak Leather
Company v. Armour-Cudahy Packing Company, 99 Ky.,
667; 18 R., 497; 37 S. W., 81, suit was brought to recover
the price of certain hides, and a counterclaim was pleaded
for damages on account of their defective condition.    The de-
fendant paid for the first car load of hides before they were
received, and the defective condition of the hides was dis-
covered while they were being fleshed.    They were received
in July, and the defects were discovered in the beamhouse

early in August.    They could not have been discovered before in the ordinary run of their business.    Notice of the defects were at once forwarded to the seller, and damages demanded. . It responded, admitting the inferior condition of the hides, and promising a better showing on the second car load.    In a few days the second car arrived, and the hides were found in a worse condition than the first.    The purchaser offered to surrender the hides, except eighty, which it proposed to keep to pay the damages.    This offer was refused, and, it becoming apparent that the hides were about to spoil, it sent to the seller the price of the hides as stipulated in the contract, less its claim for damages, and proceeded to use them in order to save them.    It was held that the counterclaim was maintainable, and judgment was entered for the defendant.    The case before us falls within the principle of this case, and is not governed by the rule laid down in Jones v. McEwan.

The first shipment of the yarn sued for was made October 1st.    The last shipment was made on November 12th. The yarn was rolled on cones, and its condition could not be ascertained until the cones would be unwound.    In the ordinary course of business, this would be when the cones were placed in the machines, and the yarn was unwound for use.    The rule relied on for appellee applies only to such things as may be inspected in the ordinary course of business before they are accepted.    It does not apply to defects which could not be discovered by ordinary care in the usual course of business when the goods are received. When appellants received the yarn in contest, they had a right to presume that it was such as the contract required, and were not required to anticipate defects which could not be ascertained by ordinary care, in the usual course of business, before using the yarn.    Complaint having been

made promptly, and the seller promising to remedy the defects and to compensate the purchaser for the loss, the counterclaim is maintainable. The letter of the plaintiff shows that there had been previous correspondence. It recognizes the defectiveness of the yarn, and is a promise that Mr. McKeldin will make everything satisfactory.

In setting out their damages, the defendants alleged that by reason of the defective quality of the yarn their machinery was damaged in passing the yarn through it in the sum of $200; that they were further damaged by reason of their inability to do full work with their machinery, on account of the yarns being defective, in the sum of $450; and that by reason of the failure of the plaintiff to deliver the yarns of the quality, character, and kind contracted to be furnished, they were damaged in the sum of $200. It is earnestly argued for appellee that the damages to the machinery, or by reason of appellee's failure to do full work with the machinery are so remote, and that the other item of damage is vague and indefinite, that it should be disregarded. Ordinarily the measure of damages on the sale of a chattel is the difference in value between the article contracted for and that delivered. But where an article is sold for a particular purpose the purchaser may be entitled to recover such special damages as may be considered within the reasonable contemplation of the parties as the natural and probable result of the breach of the contract, it being the duty of the purchaser to make his damages as small as he can by the exercise of ordinary care. 24 Am. & Eng. Ency. of Law, pp. 1155, 1156. The yarn sued for was sold to the defendants to be manufactured in their plant into hosiery. The measure of damages is the difference in value of the yarn for the purposes for which it was bought as it was contracted to be delivered, and the yarn as it in fact was; and, in

addition to this, the jury, may also allow such damage as was done to the machinery in giving the yarn a fair trial, or such damage as occurred from loss of time in making the trial, provided ordinary care was exercised by the defendant in making the trial, and no loss which might have been avoided by the exercise of ordinary care in the proper course of business should be allowed.    The case is here on demurrer to the answer, and, taking its allegations to be true, as we must on demurrer, we conclude it sufficiently states a cause of action.    The pleader might have made simply a general allegation of damage in the sum of $850 by reason of the defectiveness of the yarn, as he did in the amended answer, and under this he could have recovered general damages, but the special damages on account of the injury to the machinery and loss of time were properly specially pleaded.    Such damages are not too remote, and are often allowed in cases of this character.    2 Sedgwick on Damages, section 742; 2 Sutherland on Damages (2d Ed.) section 662.

Judgment reversed and cause remanded for further proceedings consistent herewith.