## Iowa Gas & Electric Company v. Wallins Creek Coal Company.

(Decided January 17, 1928.)

Appeal from Jefferson Circuit Court
('Common Pleas Branch, Second Division).

1. Sales.—In suit for damages for defective quality of coal sold to plaintiff to be used in production of gas, petition, not alleging that plaintiff did not have full and free opportunity to inspect coal because of cars in which it was shipped, nor alleging that plaintiff did not have opportunity to inspect coal after it was unloaded, but showing that coal was open and visible and subject to inspection before placed in plaintiff's bins, failed to show that plaintiff exercised ordinary care or made ordinary inspection of coal before it was accepted, and hence plaintiff could not recover for defect discovered after acceptance of coal.

2. Sales.—Where goods are delivered to purchaser on executory contract of sale, and purchaser accepts goods after inspecting them, or after having fair opportunity for inspection, purchaser is held to have accepted goods as full compliance with contract, and can-

not maintain action for damages on ground that goods are defective or do not measure up to terms of contract.

BLAKEY, DAVIS & LEWIS for appellant.

GORDON & LAURENT and T. M. GALPHIN, JR., for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This litigation grows out of the sale and purchase of coal in the year 1920. Appellant filed its suit for damages based on the alleged defective quality of the coal delivered by appellee. Appellee filed a counterclaim seeking to recover the balance due on the purchase price for the coal. A demurrer was sustained to the petition, and thereafter three amended petitions were filed, and each time a demurrer was sustained to the petition as amended. Appellant then filed a substituted petition covering the allegations in the original petition and the amended petitions, and a demurrer was sustained to the substituted petition. Appellant refused to plead further, and after the lapse of some years the case was submitted on the pleadings, when the court dismissed the petition and gave judgment in favor of appellee on the counterclaim.

The substituted petition shows that appellant is a public service company producing artificial gas and electric power in the state of Iowa. In July, 1920, by letters and telegrams, a contract was made by it with the appellee for the shipment of 12 carloads of gas coal at the rate of 3 cars per week. The total contract price of the coal was $8,757.52. Of this sum appellant paid $7,500, leaving a balance unpaid of $1,257.52. It is alleged in the petition that appellee knew of the purpose for which the coal would be used by appellant—that is, it knew that the coal was to be used to produce gas—and that it also knew of the quality of coal necessary for that purpose, and that it warranted the coal to be gas-producing coal of the quality theretofore supplied to appellant by appellee, and that because of the warranty the appellant relied upon appellee to furnish coal of that quality.

It is alleged that appellant knew, or by the exercise of ordinary care could have known, that the coal furnished under the contract was not coal of the quality ordered by appellant and warranted by appellee, but that appellant did not know, "and could not by the exercise of ordinary care have discovered, before using said coal,

that the same was not of the quality ordered by this plaintiff and warranted by this defendant, because when said coal was received said defective quality could not be discovered by ordinary inspection, but could be discovered only by chemical analysis or by the use of said coal.''

It is further alleged that the first carload of coal shipped by appellee arrived on or about August 15, 1920, and that the rest of the coal arrived on dates between August 15, 1920, and September 30, 1920, and that all of coal arrived before appellant knew that any of the coal was of defectve quality. It is alleged that appellant, without knowing of the defective quality of the coal, stored it in its regular bins for the purpose of use and commenced the use of it in the latter part of August, 1920, and that it had no notice of any difficulty in the production of its gas from the coal until the latter part of August, 1920, when it discovered that the normal output of gas was not being produced. It is also alleged that during the months of September and October appellant, not knowing of the defect in quality and not being able in the exercise of ordinary care to discover same, used gas oil and further tested the efficiency of its plant to see that the firing of the coal was properly done and inspected the retorts to determine if any leaks existed therein.

The petition then alleged that it was not until the latter part of October, 1920, that it discovered, or by the exercise of ordinary care could have discovered, that the difficulty was in the quality of coal which had been purchased from appellee, and that as soon as it discovered, or by the exercise of ordinary care could have discovered, that the coal was defective, it notified appellee that the coal was defective, and further notified it that no further payments on the purchase price of the coal would be made. It is alleged in the petition that it was October 29, 1920, when appellant discovered the defective character of the coal, and that it immediately notified appellee of that fact, and that appellee replied, advising that the coal was the same as had been shipped in the past; that after the notice was sent to appellee it advised that the fault must be with appellant and requested that further tests be made; that appellant made further tests and had a chemical analysis both of the coal shipped the plaintiff under the contract sued on and of the coke produced from said coal; and that the result of all experiments and tests

showed that the coal was defective and not of the quality warranted by appellee.

It appears to us that the main question to be determined is whether the defective quality of the coal, if it was defective, could have been discovered by appellant by the exercise of ordinary care before it was placed in its bins and used by appellant. Counsel for appellant do not dispute the rule that the acceptance of an article is generally a bar to any claim in damages for breach of warranty of quality if the buyer inspects the goods or the defect is visible on such ordinary inspection as the law requires a buyer to make. But they insist that this court has recognized the right of a buyer to rely upon a warranty, either expressed or implied, as against a defect which is not visible on ordinary inspection, and that there is no duty on the purchaser in the absence of knowledge or suspicious circumstances to exhaust all the possibilities of scientific research under the penalty of being held to have waived any claim in damages for breach of warranty not apparent in the ordinary course of business. They rely on the case of Wallace, etc., v. Knoxville Woolen Mills, 117 Ky. 450, 78 S. W. 192, 25 Ky. Law Rep. 1445. The pleadings in that case showed that cotton yarn was bought by a knitting mill to be delivered in weekly installments. After receiving the first shipment and running it into the machines, it was discovered that the yarn was not of the quality bought. The yarn was wound on cones and the defective quality of the yarn could not be discovered until the cones were unwound. In that case it was held that the defects of the yarn were such as could not have been discovered by ordinary inspection and for that reason the purchaser had a good claim in damages for the injury suffered. The court in that case, in referring to the well-known principle that the acceptance of an article is generally a bar to any claim in damages for breach of warranty of quality if the buyer inspects the goods or the defect is visible on such ordinary inspection as the law requires the buyer to make, said:

"The rule relied on for appellee applies only to such things as may be inspected in the ordinary course of business before they are accepted. It does not apply to defects which could not be discovered by ordinary care in the usual course of business when the goods are received."

In that case it would have been necessary to unwind the vast quantity of yarn from the cones in order to discover its defect. The defect was one which could not be discovered by ordinary care in the usual course of business when the goods were received. It appears to us that the facts in that case were materially different from the facts alleged by appellant in its petition. When the coal came in on the cars it was open and visible and subject to inspection and tests before it was placed in the bins of appellant.

Appellant also relies on the case of Marbury Lumber Co. v. Stearns Mfg. Co., 107 S. W. 200, 32 Ky. Law Rep. 739. That case related to a defective locomotive which the lumber company attempted to use after it was purchased before it became aware that it was defective. The court there said:

"Appellees rely on the rule which has been steadily maintained in this state that, where there is a contract to deliver chattels of a particular description at a future date and the vendor in good faith in discharge of the contract delivers goods which the vendee accepts after inspecting them or having a reasonable opportunity to inspect them, he cannot thereafter sue the vendor to recover damages upon the ground that the goods were not of the description and quality contracted for."

The court cited a number of cases where the stated rule had been applied and then continued:

"But in all of these cases the defect relied on were apparent upon inspection. A person who deals in wheat or corn or tables can tell the grade to which they belong by inspecting them."

The court there said in referring to the general rule:

" 'It does not apply to defects which could not be discovered by ordinary care in the usual course of business, when the goods are received.' "

The next case relied on by appellant is Ewing v. Hauss, 50 S. W. 249, 20 Ky. Law Rep. 1883. That suit revolved around an agreement for the purchase of an electric light plant. A recovery was allowed although the light plant was accepted. The court allowed the recovery on the ground that when the defects were dis-

covered the property was in use as an electric light plant and there was no practical way to tender back the parts complained of. It was there said:

> "If appellants accepted the articles knowing of their defective character, or were not misled by appellee's statements, and, by the exercise of such care as may be usually expected of men of ordinary prudence situated as they were, might have known of the defects, they cannot recover; otherwise this will not preclude them."

The case of Webb & Preston v. Milford Shoe Co., 128 Ky. 308, 108 S. W. 229, 32 Ky. Law Rep. 1175, is also relied on by appellant. That action grew out of the sale of a lot of boots and shoes. The boots and shoes had been accepted on delivery by appellant and a considerable quantity of them had been sold to its customers. The inferior quality of the goods was not discovered until complaints were made by customers who had purchased the goods. The court based its decision in that case on the ground that it was admitted by appellee that appellant did not know and could not have known of the defects in the boots and shoes sooner than it did discover them. The court stated that it may appear to the ordinary mind unreasonable that the discovery was not sooner made, but, nevertheless, the fact was admitted by appellee, and the court took occasion to say that it might be true that appellant could not have discovered that the boots and shoes were not of leather until after they had been used by its customers unless it had cut and destroyed a few pair to ascertain the material of which they were made, and that they were not required to do that.

The appellant relies on the cases of Bradley v. Lexington Tobacco Hogshead Company, 156 Ky. 813, 162 S. W. 83; Stanley v. Day, 185 Ky. 362, 215 S. W. 175; Hobdy & Read v. Siddens, 198 Ky. 195, 248 S. W. 505; Young v. Wallace, 201 Ky. 30, 255 S. W. 856. Each of these cases contained facts which took them out of the general rule. In neither of the cases was the general rule departed from. One of them related to the purchase of hoops which were received in packages so arranged that the defective hoops could not be discovered until the packages were broken. An ordinary inspection of the hoops in the condition in which they were received would not have disclosed the inferior hoops within the package. Another

was a case relating to the sale of hogs which were infected with cholera and the disease could not be discovered by a cursory inspection. Another related to the purchase of millet seed where it was not discovered that the seed was not as represented until it had been sown and the crops developed that it was not millet. The last case cited related to the purchase of a quantity of coal and the particular point in that case was whether the buyer had an opportunity to inspect the coal before it was accepted. The coal was shipped in cattle cars and the buyer had to pay the freight before unloading the coal. The question in that case was whether the defendant could ascertain through the car slats the character of the coal. It was held that the purchaser had the right of inspection and that the right necessarily carried with it the right to do those things without which it cannot reasonably and efficiently be accomplished. It was held that he was not given an opportunity for inspection before he was required to unload the coal. After he unloaded the coal he retained it and appropriated it to his uses when he knew exactly the character of coal that it was. The court there said:

"It was wholly immaterial, therefore, whether or not he had a fair opportunity for inspecting the coal before paying the freight and unloading it, and, as he certainly elected to and did accept it without offering to return it after every opportunity of knowing and after he knew all about it, a verdict should have been directed for plaintiff as requested."

In the instant case it is not alleged in the petition that appellant did not have a full and free opportunity to inspect the coal because of the cars in which it was shipped, and neither is it alleged that it did not have an opportunity to inspect the coal after it was unloaded. A careful consideration of the cases relied on by appellant does not show that its case can be taken out of the general rule. That it accepted the coal cannot be denied, and that it had ample opportunity to inspect before accepting it is disclosed by the petition. We do not find any allegation in the petition that appellant exercised ordinary care or made an ordinary inspection of the coal before it was accepted.

Where goods are delivered to a purchaser on an executory contract of sale and the purchaser accepts

the goods after inspecting them, or after having a fair opportunity for inspection, he is held to have accepted them as a full compliance with the contract and cannot maintain an action for damages on the grounds that the goods are defective or do not measure up to the terms of the contract. O'Bannon & Co. v. Relf & Bledsoe, 37 Ky. (7 Dana) 320; Jones Bros. v. McEwan, 91 Ky. 373, 16 S. W. 81, 12 L. R. A. 399; Duckwall & Co. v. Brooke, 65 S. W. 357, 23 Ky. Law Rep. 1459; Lykens v. Bowling & Lawson, 188 Ky. 137, 221 S. W. 519; Sachs Shoe Co. v. Maysville Suit & Dry Goods Co., 201 Ky. 239, 256 S. W. 401; Hellmers & Bettman v. Norris & Downard, 201 Ky. 401, 257 S. W. 4; City of Owensboro v. Kelley, 207 Ky. 522, 269 S. W. 551; Brown v. Price, 207 Ky. 8, 268 S. W. 590.

It is the opinion of the court that the allegations in the petition do not take appellant's case out of the general rule, and therefore it cannot recover from appellee.

Judgment affirmed.