# James Grocery Company v. Walter O. Birk Candy Company.

(Decided December 21, 1928.)

(As Modified on Denial of Rehearing March 19, 1929.)

TRABUE, DOOLAN, HELM & HELM for appellant.

GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Reversing.

W. O. Birk, a candy manufacturer of Chicago, Ill., sued the James Grocery Company, a wholesale dealer in Louisville, to recover $466 on account. The defendant admitted the shipment and delivery of the merchandise charged, but denied that it was of any value, or that defendant ever promised to pay for same.

In a second paragraph, still insisting that the goods were of no value, it further pleaded breach of warranty, and sought to recover damages for loss of trade resulting from the inferior quality of the goods so furnished. No motion was made for an election between these defenses, and the question of their consistency is not before us. This left both issues to be submitted to the jury. Lewis v. Durham, 205 Ky. 403, 265 S. W. 934.

The court placed the burden of proof upon the defendant, and at the close of its evidence peremptorily instructed the jury to find for plaintiff. Defendant appeals.

We think the court erred in adjudging the burden of proof. Plaintiff could not recover, unless the merchandise was of some value, and the answer put this directly in issue; consequently, had no evidence been introduced, judgment would have gone for defendant. This left the burden on plaintiff. Section 526 of the Civil Code.

As stated above, only defendant's evidence was heard. Aside from some apparent contradictions which are not to be considered on a motion for a premptory, it is to this effect:

In the fall of 1924, plaintiff's agent, Lindstrom, solicited it to act as the wholesale distributor of plaintiff's goods in the territory surrounding the city of Louisville. He exhibited high-class samples, and represented that the goods were of superior quality and "would stand up"— that is, remain salable for a reasonable period under ordinary marketing conditions—and offered it at a reasonable price. As an inducement to undertake such distribution, he agreed to travel with defendant's salesmen and introduce the goods to the retail trade. Final arrangements were not completed, but an order was made for the holiday trade, and it was agreed for Lindstrom to go out with defendant's salesmen and introduce the goods, and that they would afterward determine whether or not defendant would act as distributor. The order was filled in three shipments, a small amount being sent out about the middle of November, the principal consignment being made on November 21, and the order completed by shipment on December 1, the aggregate of the three shipments being $466.

Mr. Lindstrom accompanied defendant's salesmen as per agreement, exhibitd his samples, solicited trade, and procured orders for 75 per cent. of the purchase. He then left, with the understanding that he would return in a short time, and it would then be determined whether defendant would undertake to act as distributor. Defendant received the shipment in its warehouse, which is shown to have been in good condition for storage of such goods, and filled the retail orders as they came in. When these were received by the retail dealers, the goods were in bad condition. The cheaper grades, which were packed in 25 pound wired pails, had run together, and the original pieces could not be separated, and sales could only be made by chiseling blocks from a solid mass. The chocolates and other soft goods failed to "stand up" and were otherwise in bad condition, and all were of inferior quality. Some, perhaps a majority, of the dealers, made immediate complaints and returned the goods, while others waited and made complaints to defendant's salesmen; but practically all of them refused to accept the shipment unless substantial discounts were made in adjustment, and several discontinued their business with defendant.

Defendant was anticipating the return of Lindstrom and stored the returned goods, intending to adjust the matter with him. He did not return, however, and they disposed of the goods as best they could. Its president testified that it made complaint to the plaintiff in reference to the condition of the goods, but that it has misplaced its letters to that effect. The earliest letter appearing in the record is of April 5, 1925. In this letter it set out the condition of the goods, referred to previous complaints, and declined to pay for the goods. It appears that plaintiff refused any adjustment, and defendant destroyed the worthless goods, though it continued its attempts to dispose of the better class of goods, some of which still remain in its warehouse.

The peremptory instruction was based on the rule, prevailing in this state, that if "a purchaser, after inspection or reasonable opportunity therefor, accepts and appropriates to his own use merchandise contracted for, he is liable for the contract price and cannot claim damages or a deduction from the purchase price for a breach of warranty, implied or expressed." See Young v. Wallace, 201 Ky. 31, 255 Ky. 856; Kerr v. Smith, 5 B. Mon.

552; Jones Brothers v. McEwan, 91 Ky. 373, 16 S. W. 81, 12 L. R. A. 399; Bannon v. St. Bernard Coal Co., 39 S. W. 252, 18 Ky. Law Re. 1050; Nelson & Brothers v. Over-man & Shrade, 38 S. W. 882, 19 Ky. Law Rep. 161; Yeiser v. Russell, 83 S. W. 574, 26 Ky. Law Rep. 1151; Duck-wall v. Brooke, 65 S. W. 357, 23 Ky. Law Rep. 1459; Vogel v. Moore, 84 S. W. 557, 27 Ky. Law Rep. 94; Gregory Vinegar Co. v. Weller (Ky.) 116 S. W. 247; Rice v. Pulliam, 141 Ky. 10, 131 S. W. 1053; Forsythe v. Russell Co., 148 Ky. 490, 146 S. W. 1103; Columbia Malting Co., v. Glenmore Dist. Co., 150 Ky., 229, 150 S. W. 53. This rule does not apply, however, to "defects which could not be discovered by ordinary care in the usual course of business when the goods are received." Wallace v. Knoxville Woolen Mills, 117 Ky. 450, 78 S. W. 192, 25 Ky. Law Rep. 1445; National Oak Leather Co. v. Armour-Cudahy Packing Co., 99 Ky. 667, 37 S. W. 81, 18 Ky. Law Rep. 497; Munford v. Keville, 109 Ky. 246, 58 S. W. 703, 22 Ky. Law Rep. 730; Bradley v. Lexington Tobacco Hogshead Co., 156 Ky. 813, 162 S. W. 83.

Here the goods were reshipped in their original packages, and defendant's evidence indicates that they could not be inspected and the defects discovered without breaking the packages and injuring their salability, and it is insisted that this relieved the defendant from the duty of inspection, and brings this case within the above-stated exceptions to the general rule. The argument is plausible, but we do not deem it necessary to determine whether any distinction can be drawn in this respect between the duty of wholesale dealers generally and that of retailers and ultimate purchasers, because, assuming, as we must on a motion for a peremptory, the truth of defendant's version of the transaction, the shipment was in the nature of a trial order. The goods were sold by plaintiff's agent to the retail dealers upon the faith of plaintiff's samples, and these orders were filled by defendant from the shipment almost immediately after it was received. Under such circumstances, there being no patent defects, it cannot be said that defendant was under the further duty of inspecting the contents of the unbroken packages and seeing the goods were in accordance with the samples the agent had exhibited to the retailer. Defendant received complaints from its customers early in December, and most of the goods so sold were returned to it during that month, or adjustments made to the pur-

chasers by allowing the claims and crediting the accounts therewith. And ordinarily plaintiff should have been tendered a return of the goods on hand. But, if this was a mere preliminary order looking toward a future contract, with the understanding that Mr. Lindstrom was to speedily return for a determination of that question, defendant's action in waiting a reasonable time for his return, in anticipation of an adjustment with him, did not preclude it from relying upon a breach of warranty. It follows that the court erred in granting a directed verdict.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.